# The People ex rel. Hudson et al., v. P. E. DeMill et al.

*Quo warranto: Pleading: Misjoinder.* The information charged defendants with intrusion into the offices of Wardens and Vestrymen, of St. Paul's Church, Detroit, " *a corporation created by the authority of this State.*" *Held,*

1. That inasmuch as the court had no judicial knowledge of the existence of any such corporation, the information was defective in not setting forth such facts as in connection with the public statutes, of which the court can take judicial notice, would show such corporate existence.

2. Where a corporation is created by special statute, such existence need not in general be shown by further averment; but where not so created it must be made out according to the facts.

3. Where an information is filed for usurpation of office, the existence of the corporation is a jurisdictional fact, which must be averred unless judicially known.

THE PEOPLE *v.* DEMILL.

4. When the court is not judicially informed concerning the nature of an alleged office in a corporation, it must be so described as to its nature and duties as to show whether it is such an office as comes within the purview of the law relative to the usurpation of franchises.

5. Persons claiming to be wardens and vestrymen of a church can not join as relators to test in one proceeding their rights to the offices respectively, against adverse claimants.

*Heard January 10th and 11th.  Decided January 14th.*

Information in the nature of a quo warranto.

The information was filed to determine the legality of the election of the wardens and vestrymen of St. Paul's Church, in the city of Detroit.

The pleadings were as follows:

*Information.*

" Albert Williams, Attorney General of the State of Michigan, who sues for the people of the said State, in this behalf, comes here before the Justices of the Supreme Court of the same people, on the eighteenth day of October, in the year one thousand eight hundred and sixty-six, and upon the relation of Elon W. Hudson, Frederick A. Stokes, Kirkland C. Barker, Thomas J. Cram, Alonzo D. Denny, Alexander W. Copland, Marcus Stevens, Thomas Woodhams, Israel Mowry and Charles F. Clark, according to the form of the statute in such case provided, gives the court here to understand and be informed that Peter E. DeMill, Benjamin Vernor, James V. Campbell, Thomas Radcliff, Allen S. Sweet, Willard Parker, Lorenzo M. Mason, Edward LeFavour, Robert P. Toms and Richard H. Hall, of the city of Detroit, in the county of Wayne, and state aforesaid, for the space of one month now last past, have held, used and exercised, and, still do hold, use and exercise, without any legal election, appointment, warrant, or authority whatsoever, the office of wardens and vestrymen, to wit, the said Peter E. DeMill and Benjamin Vernor the office of wardens, and the said James V. Campbell, Thomas

Radcliff, Allen S. Sweet, Willard Parker, Lorenzo M. Mason, Edward LeFavour, Robert P. Toms and Richard H. Hall the office of vestrymen, in St. Paul's Church in the said city, a corporation created by the authority of the said state, under the name and style of "The Rector, Wardens and Vestrymen of St. Paul's Church, in the city of Detroit."

And the said Attorney. General further gives the court here to understand and be informed, that at an election for wardens and vestrymen, held on the sixth day of September now last past, the said Elon W. Hudson and Frederick A. Stokes were duly elected and chosen Wardens of said corporation, and Kirkland C. Barker, Thomas J. Cram, Alonzo D. Denny, Alexander W. Copland, Marcus Stevens, Thomas Woodhams, Israel Mowry and Charles F. Clark, were duly elected and chosen vestrymen of said corporation, and that the said Elon W. Hudson and Frederick A. Stokes, have ever since been and still are rightfully entitled to hold, use and exercise the said office of wardens; and Kirkland C. Barker, Thomas J. Cram, Alonzo D. Denny, Alexander W. Copland, Marcus Stevens, Thomas Woodhams, Israel Mowry and Charles F. Clark, have ever since been, and still are rightfully entitled to hold, use and exercise the said office of vestrymen in said corporation; which said office of wardens the said Peter E. DeMill and Benjamin Vernor, during all the time aforesaid, have usurped, intruded into, and unlawfully held and exercised, and still do usurp, intrude into, and unlawfully hold and exercise; and which said office of vestrymen the said James V. Campbell, Thomas Radcliff, Allen S. Sweet, Willard Parker, Lorenzo M. Mason, Edward LeFavour, Robert P. Toms and Richard H. Hall, during all the time aforesaid, have usurped, intruded into, and unlawfully held and exercised, and still do usurp, intrude into, and unlawfully hold and exercise, to wit, in the state and

county aforesaid, in contempt of the people of the State of Michigan, and to their great damage and prejudice.

Whereupon the said Attorney General prays the advice of the court here in the premises, and for due process of law against the said Peter E. DeMill, Benjamin Vernor, James V. Campbell, Thomas Radcliff, Allen S. Sweet, Willard Parker, Lorenzo M. Mason, Edward Le-Favour, Robert P. Toms and Richard H. Hall, in this behalf to be made to answer to the said people by what' warrant they, the said Peter E. DeMill and Benjamin Vernor, claim to hold, use, exercise and enjoy the said office of wardens in said corporation; and the said James V. Campbell, Thomas Radcliff, Allen S. Sweet, Willard Parker, Lorenzo M. Mason, Edward LeFavour, Robert P. Toms and Richard H. Hall, claim to hold, use, exercise and enjoy the said office of vestrymen in said corporation.

ALBERT WILLIAMS,<br>
<em>Attorney General, Michigan.</em>

HOVEY K. CLARKE,
<em>Of Counsel.</em>"

*Demurrer.*

" And now come the said defendants, by Levi Bishop, their attorney, and having heard the said information read, they severally say that they do not think that the said People ought to impeach or trouble them, or any of them, by reason of the premises in said information specified or mentioned; because they severally say that the said information, and the matters therein contained, are insufficient in law, and that they need. not, nor are any of them obliged by the law of the land to answer thereto; whereupon, for the insufficiency thereof, they severally pray judgment, and that they, and every one of them, be discharged and dismissed by the court hereof, and from the premises above charged upon them with costs. And the said defendants would further severally say, that in addition to all grounds

competent to be urged under the above demurrer to said information, they will also insist on the following special causes, viz.:

1. It is not averred with sufficient certainty and precision in said information, that the "Rector, Wardens and Vestrymen, of St. Paul's Church, in the city of Detroit," mentioned in said information, had actually been "created a corporation by the authority of this state," and continued to be such until said information was filed, so as to bring the case within the purview of the statute.

2. It is not averred in said information by or under what law, special or general, or when said parties had been so incorporated.

3. Neither is it averred that said offices of wardens and vestrymen had been created or provided for in such act of incorporation; what the nature of their duties, or how appointed or elected, and the tenures of their office.

4. It does not appear from said information whether the said relators had been elected as a vestry at an annual or special election or not, or whether the said election was authorized by the provisions of the alleged act of incorporation, or what the provisions of such act were.

5. It is not averred in said information that any particular defendant usurped or exercised any office claimed by any designated, relator.

6. That the information presents the pretended rights of several relators to several distinct and separate offices, and of different classes, who, however, are not averred to have accepted or claimed said offices.

7. The alleged corporation is of a private nature; has no concern with the government or the administration of justice; has nothing of a public nature about it, and does not come within the purview of the statute on which the proceedings are based.

And also, that said information is in other respects uncertain, informal and insufficient, etc."

THE PEOPLE v. DEMILL.

To which a general replication was filed.

A. D. Fraser and L. Bishop, for defendants, in support of demurrer.

1. It is not averred in a direct, positive and affirmative manner, and with sufficient certainty and precision, that said corporation had been created, and still existed, so as to bring the case within the purview of the statute.

The information is radically defective in not setting forth all the facts necessary to be alleged, to show that the officers of St. Paul's Church had been incorporated according to the laws of this state. It has been held by the courts of New York, from which we have adopted the statute, regulating these proceedings, that all grounds of complaint under it must be set out with all the exactness of pleading required in an action for a penalty, or for a libel, etc. 23 Wend. 193, 217, 221, 223, in which the case of the 9 Wend. 374, 375, laying down the same rule is fully approved of. To the same effect are the following authorities:—5 Bacon's Ab. Information C, p. 178, 179; Comyn's Dig. Plead. C. 76; 1 Lord Raymond, 107, 478; 1 Salk. 139; 2 Mass. 444; 4 Id. 471.

This is essential, that it may appear, whether or not the act charged, comes within the purview of the statute. 1 Chitty's Pl. 322, 324, and notes; 2 Doug. 159, 278; 5 T. R. 70.

Judge Buller says: "The allegations must set forth everything, which is matter of substance, material or essential, to the plaintiff's demand."—1 Esp. 299; Buller's N. P. 167.

The information must state, directly and affirmatively, the grounds of complaint, so that they may be traversed. 7 Bacon's Ab. Information, B. Decln. 510; Graham's Pr. 211; Philip's Ev. 165, 166; 2 Str. 1151, 1162; 2 Salk, 636; 1 Chitty's Pl. 216, 217, 228.

Facts only are to be stated, and not arguments or inferences, or matters of law.—1 *Chitty's Pl.* 196; *Cowp.* 684; 5 *East*, 275; 10 *Id.* 205; 1 *Johns.* 468; *Willcock on Corp.* 466; 7 *E. C. L.* 168; 4 *Blackf.* 392; 6 *Ala.* 169.

It ought in all matters to state that which is the essence of the action—7 *Bacon's Ab. Pleas and Pleadings*, 510, 465, 477—and this must be done by positive and express averments.—*Ibid.* 510, 579.

If these principles are applied to this information, it will be found that it is destitute of those elements, which are essentially necessary for the object in view.

2. It is not averred in the information by or under what law, private or public, general or special, or when the said parties had been created a corporation.

It is not pretended that the officers of said church had been incorporated by any special statute, and assuming the creation of such corporation, under one of the numerous general acts adopted in this state since the year 1807, relative to "Religious Corporations," it is still more necessary that the information should state the precise law under which it claims to have been organized. Hence it was held in Indiana that the information should inform the court, under what statute a company was organized, so that the court might be acquainted with its charter, and know its powers and duties, 16 *Ind.* 456; all the precedents too, both English and American, are to this effect, 4 *Cow.* 107; 5 *Day*, 329; 1 *Denio*, 389; 13 *Penn.* 133, 136; 6 *Wentw.* 154. In 16 *Wend.* 658, the decision turned upon the effect of precedents. In prosecutions for an offense created by statute, a reference to it is indispensable, and so in penal actions.—3 *Comst.* 188.

Even in civil actions, on our own statutes, under our present system, a reference to the particular statute on which a suit is based, is essentially necessary, 2 *Comp. L.* §§ 5115, 5117, 5116, 4156 *to* 4158, and in ordinary actions by or against corporations a party must set forth the title

to the act under which the corporation was created, and the date of its approval.—2 *C. L.* 1291, §§ 6, 7.

The 18th subdivision of the 3d section of the chapter on statutes, (1 *C. L.* 89,) does not dispense with the necessity of such reference, even in actions based on special statutes; besides, this provision has no applicability whatever to a corporation organized under a general law, of which the court can not take notice until pleaded, for its creation is merely a matter *in pais,* and must be shown by pleading.

3. Neither is it averred that such officers, as wardens and vestrymen, had been created or provided for in such act of incorporation, or the nature of their duties.

A simple act of incorporation is often applied for in order to enable a company to sue by a general name; to have a common seal; to transmit their rights, property, etc., to succeeding members, without conveyances, and without any other aim. These attributes alone are sufficient to constitute a corporation: neither the possession of property, nor the actual enjoyment of franchises is necessary.—*Angell & Ames, p.* 26.

But this is not enough to give jurisdiction to this court.

It is necessary, in addition to its corporate character, to confer upon it certain privileges and immunities, which are to be enjoyed by the corporators in common.—1 *Kyd,* 70; 6 *East.* 359, 361, 363; 5 *T. R.* 85; *Skinner,* 311; 15 *Johns.* 358, 386; 10. *Co.* 31a; 3 *Id.* 75, b; 4 *Comyn Dig.* 450, 452, 465, 474; 1 *Black. Com.* 475, 476; *Angell & Ames,* 365, 66.

"It is true," say the court, in the case of Regina *v.* Mousley, (55 *E. C. L.* 945,) "that a charter was obtained from the Crown, according to the founder, in order to incorporate the members of his foundation; but that alone is quite immaterial, as the Crown neither added anything to the foundation, nor reserved to itself any control over it." But, if on this corporation be conferred

a "franchise," then it is this franchise which is protected by the courts, 1 *Kyd*, 14, 15; *Angell & Ames*, 618; hence the necessity of setting out this "franchise" in this information, especially as some of the general laws above alluded to, contemplated little more than the mere act of creating a body corporate, without any franchise; and in others, powers were delegated to the corporations to create officers, prescribe their duties and terms of office. The information in this case is entirely inapplicable to the case, and was designed merely to apply to an officer, whose office and duties were prescribed by public law. All the precedents already cited support this view. Aside from these considerations, it is highly proper, that this legal document should contain a full statement of all the facts connected with the case. The English courts, impressed with the propriety of this course, have adopted stringent rules, requiring the *rule nisi*, granted in such cases to contain a statement of the intended objections, in the nature of a bill of particulars; and no objection can be raised by the prosecution on the pleadings not so specified.— 48 *E. C. L.* 96, *note B ;* 64 *Id.* 939.

The sole object of this proceeding is to resume a franchise; hence the necessity of showing in what it consists; and if it springs from a general law, or a by-law, then the whole matter must be set out.— 2 *Kyd*, 167, 424, 425; *Angell & Ames*, 307, 308; 6 *Comyn's Dig.* 157; 2 *Johns. Ch.* 377.

4. There is a misjoinder in this information, not only as regards the relators and defendants, but, also, as respects the causes of complaint, or offenses charged; and, especially, in embracing the wardens with the vestrymen, although each and every of them hold separate and distinct offices, and that they are distinct classes, having to perform distinct duties.

This is the most extraordinary feature of this case. The course adopted here is inadmissible in either civil or criminal

proceedings, except when the peculiar nature of the case. or the statute law permits it. The statute governing these proceedings very distinctly contemplates only a contest for one office in any one information. In the nineteenth section of 2 *C. L. p.* 1394, it is laid down that " when several persons claim to be entitled to the same office or franchise, one information may be filed against all such persons, in order to try their respective rights to such office or franchise." But here are ten different persons, holding as many distinct offices, which are claimed by as many distinct relators. Nor is it permitted in practice. It is a misjoinder as regards relators and defendants. — 5 *Bacon's Ab. Information C.* 179, 183, 187; *Comyn's Dig.* 196; *Willcock*, 481, 482; *Angell & Ames*, 633; 2 *Kyd*, 413; 4 *Cow.* 109. The nature of the trial and the judgment show that there should be separate informations. — 2 *Comp. L.* §§ 5310, 5312.

The same rule obtains in civil actions, and the objection is available, either on general demurrer, arrest of judgment, or on error. — 1 *Chitty's Pl.* 178, 188, 394; 1 *Tidd.* 12, 694; 1 *Taunt.* 212; 2 *Bos. & P.* 424; 2 *Saund.* 210, *notes;* 18 *E. C. L.* 461.

5. All the defendants are charged jointly with having intruded into and usurped ten offices, and with having held, used and exercised the same, although said offices are manifestly separate and distinct in their natures. This objection is as fatal as the last, and may be availed of in the same way. — 1 *Chitty's Pl.* 34, 73, 74, 182, 183, 187; 7 *Bacon's Ab. Pleas and Plead.* 471.

" If in legal consideration," says Chitty, 73, " several can not concur in the act complained of, separate actions must be brought against each." And in criminal cases several offenses can not be joined, as for perjury ( 2 *Str.* 921 ), or for seditious words or the like, because such offenses are, in their nature, several. " Even where several commit a joint act, not of itself illegal, but which became so, by

reason of some circumstances applicable to each severally, and not jointly, they must be indicted separately."— 1 *Barb. Cr. L.* 338; 2 *Hawk. C.* 25, § 89. Thus several partners can not be indicted jointly for exercising their trade, without having served an apprenticeship. — *Ibid.* 1 *Salk.* 382; *Str.* 623. And when several defendants are permitted to be included, the word "several" must be inserted, which makes the offense several as to each. — 1 *Barb. Cr. L.* 338. And so are the precedents. — 6 *Wentworth;* 4 *Cow.* 107.

On a joint charge there must be proof of a joint offense. — 1 *Barb.* 338; *Russ. & Ry. C. C.* 257, *in receiving stolen goods.*

It required a special provision in our code to sanction a joint indictment in certain cases. — 2 *Comp. L.* § 6052.

6. The alleged corporation is of a strictly private nature; has no concern with the government, or the administration of justice; has nothing of a public nature about it, nor does it enjoin any public duty, or come within the statute on which the proceedings are based.

We are aware that Angell & Ames (from 614, 618, and also at p. 627), take somewhat of a different view of the subject; but a series of decisions of the English courts, on a statute somewhat similar to ours, we apprehend, puts this question at rest. It has been held that no case is embraced in the statute, except such as were cognizable at common law, and we have several decisions in which this writ has been denied against wardens and vestrymen. — 2 *Str.* 1196; 4 *T. R.* 381; 11 *Sergt. & R.* 73.

*Vide* on the general doctrine. — *Willcock,* 457, 464; 3 *Burr.* 1615; 1 *Dow. & Ry.* 426; 16 *E. C. L.* 45; 30 *Id.* 132; 21 *Id.* 61, 62; 33 *Id.* 210.

In this case Lord Denman said: "We are not at liberty to depart from the case of Ramsden, which was decided after much consideration."— *Also,* 55 *E. C. L.* 945, *already cited; see, also,* 11 *S. & R.* 73, 74; 21 *Ill.* 65.

The case referred to from S. & R. presents very strong reasons why the court should not interfere with this class of cases. Beside, there is a remedy by civil action. — *Andrew's R.* 14; 3 *Kent,* 459, 618; 3 *Burr.* 1821, 1822; 10 *Wend.* 327.

7. It is not averred in the information that any particular defendant usurped or exercised any office claimed by any of the designated relators; but it presents the supposed rights of several relators to several distinct and separate offices, and of different classes, who are not even averred to have accepted of said offices, or to claim them, which we apprehend to be necessary. — 5 *Day,* 529.

8. It does not appear from said information whether said relators had been elected at an annual or special election or not, or whether said election was authorized by the provisions of the alleged charter, or what the provisions of such act were, in this regard.

*H. K. Clarke,* for relator.

1. A demurrer to an information in the nature of a *quo warranto* is an unusual proceeding. It may be conceded that it is the proper method for obtaining an adjudication of the court upon an information, substantially defective; but it is unusual, because the information rarely, if ever, tenders the precise issue to be tried. It is more in the nature of a rule to show cause than a pleading to be treated by technical rules. The defendant must either disclaim or justify.

If he disclaim, there is, of course, no occasion for an issue. If he justify, he must do it by plea, in which he must accurately set forth his title and aver specifically every fact necessary to show his present continuing right.— *A. & A. on Corp.* (4th ed.) *Ch.* 21, § 756; 3 *Ark.* 570; 15 *Ill.* 213; 1 *Denio,* 388.

The defendant is obliged to assume the affirmative, and his plea tenders the issue. This explains why a demurrer

to an information is so unusual, and it shows, also, that the most general averments are all that is necessary to require the defendant to disclose the authority under which he claims to act. — 2 *Mich.* 348; 5 *Id.* 146; 13 *Id.* 384.

All the causes assigned for the demurrer, except the last, seem to be founded upon an opposite theory, namely, that it is the duty of the Attorney General to aver every fact necessary to exclude every inference in favor of the defendant's right. It demands the highest degree of certainty — "certainty to a certain intent in every particular." This theory of the defendant's counsel is not supported by any of the authorities, and being erroneous, all the causes of demurrer founded upon it, fall with it.

2. The seventh of the assigned causes of demurrer is that "the alleged corporation is of a private nature, * * * and does not come within the purview of the statute on which the proceedings are based."

At common law, the right of the Attorney General to file the information, without asking leave of the court, was not denied. In cases where it was necessary to ask the leave of the court to file the information, and the franchise was not of a public character, leave has been refused. It was only in such cases that the private or public character of the franchise became material. — *A. & A. on Corp.* (*4th ed.*) *Ch.* 21, §§ 734-5-6; 10 *Mass.* 290.

The courts of Pennsylvania, however, in which state the statute of Anne had never been enacted, entertained jurisdiction of just such cases as this. — 3 *S. & R.* 28; 5 *Id.* 510; 11 *Id.* 73; 15 *Id.* 127.

The statute of this state leaves no room for doubt as to what constitutes a proper case for the action of the Attorney General — "when any person shall exercise any office in any corporation created by the authority of this state." — *Comp. Laws*, § 5291.

The proceeding here is against persons claiming office

in a corporation; and the usurpation complained of is averred in the precise words of the statute, namely, that they "exercise" an "office in" a "corporation created by the authority of this state."

This averment is as certain as that required in the United States courts in averring the existence of a corporation. — 16 *How.* 314; 20 *Id.* 227; 6 *Pet.* 761.

These are averments of jurisdictional facts. If they be sufficient for that purpose, there can be no doubt of the sufficiency of the averments in this information.

Acts of incorporation in this state are deemed public acts, and do not require to be specially pleaded. — *Comp. L. p.* 89, § 18.

*C. I. Walker,* on the same side.

1. Although the proceedings by quo warranto are criminal in form, they are to determine civil rights, and the principles applicable to pleadings in civil cases measurably prevail. — *Angell and Ames on Corp.* (3d *Ed.*) 686 *and* 687; 28 *Penn.* 387; 4 *Seld.* 70.

Thus certainty only to a common intent is required. — 1 *Blackf.* 271.

Then, too, in these proceedings the state is bound to make no showing, and the averments of the information may be of the most general character; the object being to require the defendant to show cause. — *Angell and Ames on Corp.* 717; 5 *Mich.* 148; 12 *Id.* 394; 3 *Ark.* 570; 15 *Ill.* 217.

As to the general nature of these averments see *Green's Prac. pp.* 486, 492; 4 *Cow.* 106; 10 *Mass.* 290.

In the light of these general principles let us look at the special grounds of demurrer in this case.

2. The creation of the corporation by the authority of the state is clearly and distinctly averred in the very language of the statute, and with as much fullness and clearness, as would be required, if the corporation were

the plaintiff in a civil action. — 2 *Comp. L.* § 5290; *Gould's Pl. Ch.* 3, § 61; 1 *Chitty's Pl.* 256, 382; 2 *Id.* 29, 34.

The origin of the corporation having been clearly stated, its continuance will be presumed. — 2 *Doug.* 364.

3. It was not required by any known rule of pleading, either to set out by what law or when the incorporation took place.

The fact of the incorporation by the authority of this state was the only fact necessary to be averred; and that is averred in a clearly issuable form.

4. It was unnecessary to aver the nature or tenure of the office, or whether it be one created by the act itself or under the act by its authority.

It is distinctly averred that the defendants have intruded themselves into, and unlawfully hold the offices named; and that they are offices in the corporation.

The statute makes no distinction between offices created by the act of incorporation itself, and those created by virtue of its authority.

If the defendants hold such offices, as they are charged with doing, they have no need to be informed of the duty or tenure of the office. They are called upon to justify their holding.

If they do not hold the offices they may disclaim.

5. It was entirely unnecessary to set forth any more specifically the claim of the relators to said offices. Indeed, it was not necessary to set them forth at all, and no issue can be taken upon these averments. — 2 *Comp. L.* § 5293; 2 *Mich.* 348.

6. The statute applies as well to offices in private as in public corporations. And in this country it is settled independently of the statute, that a quo warranto will lie for intruding into the office of a private corporation. — *Angell and Ames on Corp.* 694, 696, *and cases there cited;* 15 *S. and R.* 127.

COOLEY J.

It is commonly a source of regret when a court is compelled to dispose of the case before it without passing upon the main questions raised; but the nature of the record in the present case is such as to leave us no alternative. We are clearly of opinion that the information is fatally defective in two particulars.

It is defective, *firstly*, in not showing in what manner the organization in which the defendants are accused of having usurped office became a body corporate.   When any person, or association of persons, is charged with usurping the franchise of a corporation, it is sufficient for the Attorney General to call upon them, in general terms, to show by what authority they claim the right to exercise such franchise; but when the very nature of the proceeding is such as to assume the actual existence of a corporation, and it is alleged that defendants usurp some authority therein, no ground whatever is shown for calling upon defendants to show their right until it is made to appear that a corporation exists.   The claim to a corporate franchise, which does not exist in fact, may be a great public wrong, demanding immediate redress; but the claim to an office in a corporation which has no existence, can hardly be a matter of public concern, unless accompanied with the attempt to exercise a corporate franchise; in which case the remedy would be an information, not for the unlawful intrusion into an office, but for the usurpation of the franchise.   The information in a case like the present must, therefore, show that a corporation exists; for until that is shown, it is not made to appear that there is any office into which the defendants can intrude.   The precedents in proceedings against public officers, are not applicable, in all particulars, to the case before us; since those are cases where the courts must judicially take notice of the existence of the offices, and no allegations are necessary to show how they were created.

The statute under which this information is filed — *Comp. L.* § 5291 — authorizes this proceeding in the case of usurpation of office " in any corporation *created by the authority of this state.*" The information avers, in the words of the statute, that the corporation known as the " The Rector, Wardens and Vestrymen of St. Paul's Church, in the city of Detroit," of which the defendants claim to be wardens and vestrymen, is "a corporation created by the authority of this state;" and we might infer it to be the view of the pleader that the statute establishes a rule of pleading; whereas, in our opinion, it only points out the cases in which an information may be filed, leaving the mode of showing that the case is one within the statute, to be governed by the rules of pleading before in force.

Where a corporation has been created by special charter, we do not regard it necessary, though perhaps usual, to do more in the information than to aver its existence in general terms; since the court is bound to take judicial notice of the charter — *Comp. L.* § 2, *clause* 18 — and is thus informed of the actual corporate existence. But as the body in question has no such charter, and if it exists as a corporation at all, must have been constituted such under some general law of the territory or state, by acts *in pais*, it is obvious that there is nothing upon the face of this information by which the court can see that the allegation that the church is a corporation, is true in fact. The bare averment that it is one, is but a conclusion of law drawn by the pleader, but which the court ought to have the means of drawing for itself from the facts set forth.

We were referred upon the argument to several cases in which it has been held that when the state calls upon one to show cause why he claims to exercise a corporate franchise, or to possess a public office, the allegations of the Attorney General may be of the most general character, while the defendant is required to set forth specifically, and with particularity, the grounds of his claim, and the

continued existence of his right. — *People v. Mayworm*, 5 *Mich.* 148; *People v. River Raisin & Lake Erie R. R. Co.* 12 *Mich.* 398. We have no disposition to qualify these decisions in any way. The state has always a right to demand of any one assuming a public office or franchise to show his authority therefor; but the state has no concern with the unfounded claims which parties may make to an office not existing in fact. The existence of the corporation in the present case is a jurisdictional fact which must be set forth; while there was no corresponding jurisdictional fact to be alleged in the cases cited. The right to file information, in those cases depended solely upon the discretion of the Attorney General; while in this case there must be corporate existence, or he is not authorized to call upon defendants to show ground for their claims. Jurisdiction appearing, the facts relating to the usurpation or intrusion may be alleged here as they were in those cases, in very general terms; and similar allegations to those referred to in the cases cited have not been objected to in the present case.

There is also a broad distinction in respect to this particular point between the cases now before us, and those cited by counsel from the federal decisions, where the question related to the averment of citizenship, where one of the parties was a corporation. That question affected either personal rights to sue, or personal exemptions from being sued in the particular court; and the fact was one of which the court would take no notice in any stage of the case unless it was specially put in issue. But here the fact of corporate existence is the basis of any authority at all in the court to act in respect to the subject of controversy, and it is not one in respect to which there can be a waiver by the parties. This proceeding by information is of a prerogative character, to enable the court to see that privileges or franchises granted by or pertaining to the sovereignty of the state are not usurped,

intruded upon or abused; and it pertains to the dignity of the court to see that parties do not use it, even by consent, for private purposes. If the general allegation employed in this case were sufficient, and the proof could be waived by the parties, it would be easy to impose upon the court the disputes as to offices in voluntary associations, in no way affecting prerogatives of sovereignty, and to which this proceeding has no application whatever.

But if this were not a jurisdictional defect, there would still be reasons why the mode in which the corporation became such should be pointed out. Although the statute says the information may be filed against "*any* person" usurping office in "*any* corporation," created by authority of this state, yet there must be very many cases in which the court would be at liberty to refuse to listen to the controversy. When the proprietors of a country store, or the members of a village library association, or the participants in a district school debating society, or an association of musical amateurs, may incorporate themselves under our general laws, and establish various grades of offices for the purposes of their organization, it can scarcely be seriously urged that the Supreme Court can be required to settle all their contested elections and appointments in this proceeding. There are grades of positions denominated offices which do not rise to the dignity of being entitled to the notice of the Attorney General by information, if in fact there be not corporations which are not within the intention of the statute — upon which we express no opinion. An information filed in a case not proper for the consideration of the court, it should have the opportunity to dismiss in some preliminary stage of the case; and for that reason, if for no other, it ought to have the facts set forth which would direct it to the law authorizing the corporation, prescribing its functions, and indicating the powers and duties of its officers. We ought to be able to see whether the office is one provided

for by the statute, or whether, instead, it is created by some derivative authority; so that we may draw the line of distinction between those which are " offices " within the meaning of the statute, and those which are rather the positions of agents or servants merely.

But the information is bad *secondly*, because of misjoinder of parties, and of causes of complaint. It may be proper that the two parties claiming to be wardens should unite in a proceeding to test the right of those in possession, and that the eight vestrymen should do the same. This might depend upon the mode of election. But no mode of election or appointment could authorize persons claiming different offices to unite their complaints and seek to determine the title to both offices in one proceeding, without a statute specially permitting it. There is no such statute in this state, and the difficulties in the way of making it of service are so great, that it could hardly be desirable that one should be passed. It is just as competent to test in one suit the right to the offices of sheriff and tréasurer of a county, as to those of wardens and vestrymen in a church. They may derive their title from the same election, and the questions in dispute may be the same; but this is no more than will often happen when several offices of the same municipality are in contest at the same time. The misjoinder is as fatal as it would be for two persons having distinct and separate claims for trespasses committed by two others, to join in a suit to recover damages *therefor. The similarity of duties in the two offices, or the fact that the incumbents participate in the same duties, if such be the fact, can not change this fundamental rule in pleading.

We are of opinion that the demurrer is well taken. As on the ground of the misjoinder, if for no other reason, an amendment could not be allowed, the judgment must be final.

CHRISTIANCY J. and MARTIN Ch. J. concurred.

CAMPBELL J. being a party, did not sit in this case.