JAMES A. TRAINOR AND GEORGE C. BURGESS AND JOHN
E. CLARK AND JOHN B. WILLCOXSON v. THE
BOARD OF AUDITORS OF WAYNE
COUNTY ET AL.

[Four cases.]

*Boards of supervisors—Removal of officers and agents—Notice.*

1. How. Stat. § 483, subd. 17, which authorizes the board of
   supervisors of a county to remove any officer or agent
   appointed by them when, in their opinion, he is incompetent
   to execute properly the duties of his office, is construed to per-
   mit such removal without charges, notice, or hearing.
2. A city physician, a special officer in justices' courts, a chief
   janitor of county buildings, and a file clerk of county records,
   appointed by the board of auditors of Wayne county pursuant
   to Act No. 63, Laws of 1889, § 8, subd. 4 (3 How. Stat. §
   518i), which provides that appointees thereunder shall hold
   their offices for one year from January 1, unless otherwise
   specially mentioned in the resolution for their appointment,
   and which gives the board the same power of removal as
   boards of supervisors possess under the statutes of this State,
   may be removed for incompetency, with the concurrence of
   all of the members of the board of auditors, without charges
   being preferred against them or an opportunity to be heard
   thereon.
3. File clerks and janitors appointed by the board of auditors of
   Wayne county are not officers, but employés, and a special
   officer for justices' courts, or even a county physician, is not
   the holder of such an office as the courts would concern them-
   selves about in *quo warranto* proceedings; citing *People v.
   DeMill*, 15 Mich. 182; *Portman v. Fish Commissioners*, 50 Id.
   258; *Throop v. Langdon*, 40 Id. 686; *Attorney General v. Cain*,
   84 Id. 223.

*Mandamus.* Argued November 17, 1891. Denied De-
cember 21, 1891.

Relators severally applied for a *mandamus* to compel

the board of auditors of Wayne county to set aside an order removing relators from their respective places, and to restore them thereto, etc.   The facts are stated in the opinion.

*Edwin F. Conely* and *Orla B. Taylor*, for relators.

*William J. Gray* and *J. Logan Chipman*, for respondent board of auditors.

MORSE, J.   These cases all depend upon the same state of facts.

On the 1st day of December, 1890, the following persons composed the board of auditors of Wayne county, to wit: Charles P. Collins, George C. Lawrence, and James Holihan.   On that day the relators were appointed to places or offices by said board, as follows: John E. Clark, city physician; John B. Willcoxson, special officer in justices' courts; George C. Burgess, chief janitor of county buildings; James A. Trainor, file clerk of county records.   They each entered, January 1, 1891, upon their respective duties, and continued to fill such positions until May 1, 1891, at which time they were discharged. The notice of appointment informed each of them that he was appointed for a term commencing January 1, 1891, and ending December 31, 1891.   They were each afterwards notified that, at a meeting of the board held April 27, 1891, a resolution was unanimously adopted, in accordance with which his services would not be required after April 30, 1891.   At this time the board was composed of Henry J. A. Leteker, David Trombly, and James Holihan.

Each of the relators except Clark entered into a contract or agreement with the board of auditors.   The agreements, in all the cases, were dated April 13, 1891, and were signed by Collins and Lawrence for the board,

and were made after the result of the spring election
was known, but before Trombly and Leteker had assumed
office by virtue of the election. The contracts were evi-
dently made to keep the relators in their places, in fear
that an attempt would be. made to remove them, as the
election had changed the political complexion of the
board. The agreements are the same, except as to name,
position or office, and amount of salary. The agreement
with Burgess is as follows:

"It is hereby agreed by and between the board of aud-
itors for Wayne county, State of Michigan, and George
C. Burgess, as follows: The said board hereby agrees to
hire the said George C. Burgess as chief janitor of
county offices until the 1st day of January, A. D. 1892;
and the said George C. Burgess agrees to render service
to said board as such chief janitor during such time;
and the said board hereby agrees to pay him for the same
the sum of one thousand dollars per year, payable in
weekly installments of nineteen 23-100 dollars each.

"GEORGE C. LAWRENCE,
"CHAS. P. COLLINS,
" County Auditors.
"GEORGE C. BURGESS.

"Dated Detroit, April 13, 1881."

No charges of incompetency, official misconduct, habit-
ual. or willful neglect of duty, nor any other charges.
whatever, were presented against the relators by any one
to the board, nor was either of them given an oppor-
tunity to be heard or to defend himself against any
charges. The action had in discharging them was with-
out notice, except the notice that their services would
not be required after April 30, 1891, in accordance with
a resolution passed on the 27th of the same month.

The present board of auditors return that they find no
agreements, or copies of the same, on file in their offices,
but there is a resolution of record, passed April 13, 1891,
by the votes of the two outgoing members, that such
agreements be entered into. They further return that

on the 27th day of April, 1891, believing the relators to be incompetent to exercise properly the duties of their respective positions, they unanimously adopted the following resolution:

"WHEREAS, In our opinion, the following named persons are incompetent to execute properly the duties of their offices, namely, George C. Burgess as chief janitor, John B. Willcoxson as special officer in the justices' courts, James A. Trainor as file clerk of the county records, and Dr. John E. Clark as county physician: Therefore, be it—

"*Resolved,* That the above-named persons be, and are hereby, removed, and the said offices declared vacant, and that the services of the said persons be, and the same are hereby, dispensed with, from and after the first day of May, 1891."

They assert in the return that the said relators respectively are incompetent to execute properly the duties of the several positions to which they had been respectively appointed; that they immediately appointed other persons to the places so made vacant, who accepted such appointments, and entered upon the duties thereof on May 1, 1891, and have since filled said places. They claim the right to make these removals under the provisions of section 8, subd. 4, Act No. 63, Laws of 1889. They admit that the relators protested against removal; that they held themselves in readiness and offered to discharge the duties of their offices, and demanded pay, after the 30th of April, 1891.

The relators severally ask the writ of *mandamus* to compel the said board to vacate and set aside their action in removing them, to restore them to and put them in the possession of their respective places, and to pay them the compensation due them under and by virtue of their respective appointments.

This controversy is the outcome of a scramble for places, in which it is charged that members of each

political party have manifestly sought to gain partisan advantage by conferring or undertaking to confer without right the positions within the gift of the board upon its own members, to the exclusion of members of the opposite party. There is much in the record that bears out the claim of both parties in this respect. Before the election, in the fall of 1890, the board of auditors was composed of Charles P. Collins and George C. Lawrence, Republicans, and James Holihan, Democrat. November 4, 1890, Joseph Nagel, a Democrat, was duly elected to succeed Collins. Collins' term would expire December 31, 1890, and Nagel's term as his successor would have commenced January 1, 1891, had Nagel not died on the 9th day of December. Had Nagel lived, the Democrats would have had a majority of the board at the beginning of the year. Therefore, it is claimed, we find the old board meeting before Nagel's death, and on December 1, and undertaking to anticipate the appointments for the new year. The persons then in the places were not removed, but the relators and others were appointed to take the places on January 1, and to hold them for one year. If Nagel had lived, the validity of these appointments would have been, to say the least, questionable. See *City Savings Bank v. Huebner*, 84 Mich. 392. As Collins held over until the April election, the relators, who are all Republicans, received their places. In the April election, Leteker was elected to succeed Collins,[1] and the Democrats voted also for Trombly to succeed Lawrence, claiming a vacancy. The Republicans refrained from voting for more than one candidate, claiming that there was no vacancy, and that Lawrence held over. By some means Trombly, who was declared elected by the county canvassers, ousted Lawrence, and is now acting, as relators claim, as a *de facto* member of

---

[1] See *Lawrence v. Hanley*, 84 Mich. 399.

the board.[2]  This makes the present board solidly Democratic, and there would have been two Democrats and one Republican on the board had Lawrence remained in office.  It is claimed that, in view of this approaching political *status,* the Republican members of the board, on the 13th of April, passed the resolution to enter into contract, and made agreements with all the relators and other appointees to hire them for one year from January 1, 1891.  As soon as possible after the Democrats obtained control of the board, the resolution declaring the relators and other appointees incompetent was passed, and all of them removed, and other persons appointed in their stead.  By a singular coincidence all the persons removed were Republicans, and all the persons appointed to fill their places were Democrats.  The relators charge in their petitions that their removals were made solely and purely on account of political partisanship.  The board return that they "deny that the cause of the removal of said relators is solely and purely political partisanship."

It is evident that, if the positions of janitor and like places in public offices were filled with more regard for the good of the public service, and not entirely as rewards for political services, the courts would have more time to devote to other important interests of suitors.  But the right of these relators must be tested by the law as it stands, and without regard to the unworthy motives either of their appointment or removal.

It is claimed by them that their removal was illegal; that the term of their offices, by law, is one year; and that they could not be removed therefrom without charges being preferred against them, and opportunity given for a hearing thereon.  The statute authorizing these appointments by the auditors provides that the persons so appointed—

---

[2] See *Attorney General v. Trombly, ante,* 50.

"Shall hold office for one year from the first day of January, unless otherwise specially mentioned in the resolution of the board making such appointments;   *   *   *   and the board shall have the same power of removal of any such officer or appointee as boards of supervisors possess under the statutes of this State, provided such removals be made with the concurrence of all the members of said board." 3 How. Stat. § 518*i*, subd. 4; Act No. 63, Laws of 1889, § 8.

The statute authorizing boards of supervisors to make removals reads as follows:

"The board of supervisors shall have authority to remove any officer or agent heretofore or hereafter to be appointed · by said board when, in their opinion, he is incompetent to execute properly the duties of his office, or when, on charges and evidence, they shall be satisfied that he has been guilty of official misconduct or habitual or willful neglect of duty, if, in their opinion, such misconduct or neglect shall be a sufficient cause for such removal; but no such officer or agent shall be removed for such misconduct or neglect, unless charges thereof shall have been preferred to said board of supervisors or the chairman thereof, and notice of the hearing, with a copy of the charges, delivered to such officer or agent, and a full opportunity given him to be heard in his · defense, either in person or by counsel." How. Stat. § 483, subd. 17.

The respondents base their right of removal upon the peculiar wording of this statute. It will be seen that they are authorized to remove an officer when, *in their opinion,* he is incompetent to execute properly the duties of his office, or when, *on charges and evidence,* they shall be *satisfied* that he has been guilty of official misconduct or habitual or willful neglect of duty, etc.; and the officer or appointee cannot be removed for such misconduct or neglect without charges preferred to the board, and notice of the hearing and copy of the charges delivered to him, and a full opportunity given him to be heard. It is contended, and I think justly, that the Legislature

did not intend that charges should be preferred or notice given to a person sought to be removed for incompetency; that, if all the members of the board were of the opinion that he was incompetent to execute properly the duties of his office, such opinion would be sufficient ground for removal under the statute, and that notice and hearing would not be necessary. There can be no other interpretation of the statute, consistent with its wording, and the clear distinction made between the procedure in removals for the different causes assigned. The statute states first how the appointee may be removed for incompetency, and then states that he may also be removed for other causes, if certain proceedings be had, which proceedings are not required by the letter of the statute in the first place. By every canon of construction this must be considered the meaning and intent of the statute, —that the removal for incompetency is not governed by the exception in the statute, which expressly mentions the other causes and omits that; and this exception, connected with the fact that the removals for other causes are also qualified in the statute, in that they must be on charges and evidence, which qualification is lacking in removals for incompetency, leads irresistibly to the conclusion that the Legislature intended that no charges, notice, or hearing were necessary in such case.

Cases are cited by relators' counsel to show that the policy of our State system of government favors appointments to office for fixed periods, and almost entirely rejects the policy of removals at will. See *Mead v. Treasurer of Ingham Co.*, 36 Mich. 416; *People v. Lord*, 9 Id. 227; *Clay v. Stuart*, 74 Id. 411; *Hallgren v. Campbell*, 82 Id. 255; *Dullam v. Willson*, 53 Id. 392; *Metevier v. Therrien*, 80 Id. 187. In three of these cases—*People v. Lord, Clay v. Stuart*, and *Metevier v. Therrien*—the offices were elective, and the terms fixed by the Constitution, and in the

last two the law expressly stated the method of procedure to be taken in removals. In *Gager v. Supervisors,* 47 Mich. 167, and *Mead v. Treasurer of Ingham Co.,* 36 Id. 416, the removals were not attempted under the incompetency clause of the statute, and such clause was not interpreted or passed upon by the Court. In *Hallgren v. Campbell* the power to remove certain officers at the pleasure of the council was expressly given in the same section of the charter that mentioned the street commissioner as an officer. He was not included among those that might be so removed. But this last case recognizes, as do others in this State, the authority of the Legislature to authorize the removal of appointed officers, such as the relators, at the will of the appointing power. See *Stadler v. City of Detroit,* 13 Mich. 346, where the city marshal was so removed; *Attorney General v. Cain,* 84 Id. 223; *Portman v. Fish Commissioners,* 50 Id. 258. See, also, opinion of CAMPBELL, J., *Dullam v. Willson,* 53 Mich. at page 410. And, although it is the undoubted policy of our State, and best in accord with our system of government, that officers should hold for fixed terms, and not be subject to removal at the will or caprice of the appointing power, yet there is no constitutional objection to the conferring of such power of removal in offices not elective, and the Legislature has undoubted authority to do so. 1 Dill. Mun. Corp. § 250; Mechem, Pub. Off. § 454.

It is argued, and it is undoubtedly true, if it be held that these relators, and other appointees of the board of auditors, can be removed upon a finding by resolution that, in their opinion, such person is incompetent to execute the duties of his office, without any charges preferred or notice to him or hearing granted, and their opinion cannot be questioned or the fact of incompetency rebutted, that the power of removal in such case

is the power of removal at will. But, as before said, this is not prohibited by the Constitution, and in the cases before us these positions cannot be said to attain to the dignity of an office. It is not shown that either of the relators was required by law to take an oath of office or to file an official bond, or that they did either. They are not officers, but employés. *Throop v. Langdon*, 40 Mich. 673. *Quo warranto* would not lie for any of them. If it would, these relators could have no relief by *mandamus*. File clerks and janitors are not officers; they are employés; and a special officer for justices' courts, or even a county physician, is not the holder of such an office as the courts would concern themselves about in *quo warranto* proceedings. See *People v. DeMill*, 15 Mich. 182; *Portman v. Fish Commissioners*, 50 Id. 258; *Attorney General v. Cain*, 84 Id. 223; *Throop v. Langdon*, 40 Id. 686. By these cases it is settled that a chief clerk in the assessor's office in the city of Detroit and a janitor in the city offices are not officers; neither is a superintendent of fisheries for the State of Michigan, nor a policeman in the city of Adrian.

Nor is it at all singular that the Legislature made a distinction in the method of procedure between removals for incompetency and removals for official misconduct and willful neglect of duty. One charge is hard to specify and to establish, while the others are not. Official misconduct and willful neglect of duty would appear about the same to all, while incompetency would involve at once a difference of opinion, as it would be generally a mere matter of opinion. If a removal, in cases of janitors and the like employés in and about public offices, for incompetency, is to be made, it would seem wiser to leave it to the judgment or opinion of the appointing officer, rather than, every time a hall sweeper or a door

closer is to be removed from public office for failure to do his work properly, to require that charges should be preferred, and a hearing had upon them. The relators in this case may have a remedy if they have been removed solely for political reasons, and unjustly branded as incompetent when they are not; but it is not by this proceeding, as they cannot here traverse the statement that in the opinion of the board they were incompetent. It is the opinion that controls, and we must be bound by the return of the respondent that this opinion was the cause of the removal.

The writs are denied, but without costs.

The other Justices concurred.