# DECISIONS

OF THE

# SUPREME COURT OF FLORIDA.

## JUNE TERM, A. D. 1881.

THE STATE OF FLORIDA EX REL. CHRISTIAN A. HALEY, PLAINTIFF, VS. GUSTAVE STARK, RESPONDENT.

1. An act vesting discretion in the owners of one-half of the bonds of a city and twenty of its residents, by which they can dissolve the existing corporation having an elective system of government organized under an act creating a uniform system of municipal government, and re-incorporate the municipality with another and different form of government, under which the principal officers are appointed by the Governor, is unconstitutional. The power and duty of the Legislature under the Constitution is limited to the establishment of a uniform system.

2. Where the legislative intent is that the whole of a statute shall operate to accomplish an evident end and purpose, if that portion of the act providing for the accomplishment of the final purpose is unconstitutional, the dependent and initiatory provisions of the act must fall also. Where an act provides for the dissolution and re-incorporation of a municipality, and it is clear that the dissolution is authorized only as a step looking to and a foundation for the re-incorporation, if that portion which provides for 'the re-incorporation is unconstitutional, the whole act must fail.

The facts are stated in the opinion.

*R. B. Archibald* and *H. Bisbee, Jr.*, for Relator.

The relator respectfully submits that the statute of 1881

(Chapter 3316, Laws of Florida,) is in conflict with the Constitution, on the following grounds:

First. While cities and towns may be classified according to the number of inhabitants or voters, new classes cannot be created and classified according to peculiar conditions. If so, each town and city in the State might be under a different charter. The statute is virtually a local or special law (applicable to Fernandina alone) as much so as the statute of Ohio referred to in 17 Fla. Rep., 468. It is in conflict with Section 21, Article 4, Constitution of Florida, which provides that " the Legislature shall establish a uniform system of county, township and municipal government."

Second. Sections 2 and 5 of the act leave it optional with half the bond-holders and twenty persons whether the statute shall go into operation or not. 85 Penn. State, 401; 17 Fla., 268; 83 Ill., 585.

Third. The re-incorporation under said act may be compulsory, which is unconstitutional unless by direct legislative action. 29 Mich., 457; 24 Mich., 44; 18 Am. Rep., 109; 1 Dillon, Mun. Corp., 95; note, Sec. 22, Art. 4, Const. Fla.

Fourth. Section 8 of said act provides for the appointment by the Mayor of a Marshal, City Clerk and Treasurer contrary to Sec. 27, Art. 4, Const. Fla.

Fifth. The said act provides for the appointment by the Governor of municipal officers, who are to make and administer the local laws. 24 Mich., 44; Secs. 27, 17 and 18, Art. 4, Const. of Fla.; Cooley's Const. Lim., 4th Ed., pages 228, 229, 230, 43, 44; Sec. IV., 281, 212, 282, note; 1 Dillon, Mun. Corp., 82, 85.

Sixth. If any part of the act is unconstitutional, all other parts dependent upon and connected therewith must fall with it. The Legislature evidently intended the act as a

whole, as all parts are necessary to carry out their manifest design. Chief-Justice Waite, in Allen vs. City of Louisiana, Cent. Law Journal, No. 6, Vol. 12, page 137.

Seventh. Cities and towns coming under the operation of this act are declared to be " provisional municipalities," but the whole act taken together provides for a permanent city government, the officers of which are to be perpetually appointed by the Governor.

*H. J. Baker* and *Cockrell & Walker*, for Respondent.

It was not the intention of the Legislature, by the act in question, to create a new and permanent class of municipalities differing from the others in the State among other things in the matter of appointment of officers, &c., but merely to provide a provisional and temporary government by means of which to wind up and facilitate the adjustment of the bonded debts of such cities as may now or hereafter forfeit their charters under its provisions; only such cities as have passed under the operation of the law, and been dissolved, can be subject to this provisional system; hence the only class to which the system is applied arises upon the dissolution and repeal of the charter of a city under this act.

The constitutional provision that the Legislature shall establish a uniform system of municipal government would apply only when the system established was intended to be permanent, and could not with reason be held strictly applicable, whereas in this case the design of the Legislature is rather to provide for the protection of citizens and the credit of the State against fraudulent corporations, and the system provided provisional.

However we claim for the provisional system that it is uniform in its application to the dissolved classes of cities for which it was provided, and that such class will neces-

sarily have to pass under it or remain unincorporated so long as their bonded debt stands unprovided for.

Our Supreme Court construes our Constitution as not to prohibit a classification of municipal corporations under systems differing, provided the corporations of the same class should possess the same powers and be subject to the same restrictions. McConihe *ex rel.* vs. McMurray, 17 Fla., p. 270.

It is claimed by defendants that the act violates two fundamental maxims of republican government—1st, that government exists by the consent of the governed ; 2d, that taxation and representation go together.

The court cannot declare an act unconstitutional solely because it is supposed to violate some political rights of citizens, unless it can be shown that such rights are guaranteed or protected by the Constitution. Cooley's Constitutional Limitations, p. 164.

The courts are not the guardians of the people's rights, unless as those secured by the Constitution. Nor are the courts authorized to declare a statute void because it appears to violate fundamental principles of republican government, unless such principles are placed beyond encroachment by the Constitution. Cooley's Constitutional Limitations, pp. 168 and 169.

In the case of the People vs. Mahoney, 13 Mich., 500, where the Metropolitan Police Act of Detroit was under review, (a board appointed by the Legislature, vacancies to be filled by the Governor,) the court said : " Besides specific objections to the act as opposed to provisions of the Constitution the counsel for respondents attack it on general principles, and especially because violating fundamental principles of our system, that government exists by the consent of the governed ; that taxation and representation go together ; that taxation under this act is really in the hands

of a board, a body in the choice of which the people of Detroit had no choice. Held, they were represented in the Legislature which passed the act, and had the same proportionate voice there as other municipalities throughout the State, all of which receive from that body the power of local government. They were represented in that body when the present Police Board was appointed by it, and the Governor, who is to fill vacancies, will be chosen by the people at large, including that city," &c. The court concludes by saying : " We cannot be with propriety asked to declare an act void on such general objections." People vs. Mahoney, 13 Michigan, 500 ; Cooley Constitutional Lim., p. 170 ; Wynehamer vs. People, 13 N. Y., 429 ; Pensow vs. Mayor of Albany, 24 Barb., 256 ; People vs. Draper, 15th N. Y. ; People vs. Fisher, 24 Wend., 220; Tennessee Rep., B. J. Lea 2, Memphis Case.

In case of Leurhman vs. Taxing District, &c., B. J. Lea 2, the Taxing District appointed by Governor had taxing power. In answer to argument of taxation without representation the court said the Legislature was representation enough. B. J. Lea 2, Tennessee Rep., Memphis Case.

An act of the Legislature ought not to be declared void unless the violation of the Constitution is so manifest as to leave no room for reasonable doubt. Com. vs. Smith, 4 Binn., 117 ; Wellingham vs. Petitioners, 16 Pick., 95 ; Sharpless vs. Mayor, 9 Harris, 147 ; Speer vs. School Directors, 14 Wright, 158 ; Erie R. R. vs. Casey, 2 Casey, 287 ; Penn. R. R. vs. Rebletts, P. F. Smith, 16, 164.

The court ought never to declare a statute void unless the nullity and invalidity in its judgment is placed beyond a reasonable doubt. A reasonable doubt must be solved in favor of the legislative action and the act sustained. Cooley's Constitutional Limitations, pages 181 and 182.

The court cannot examine questions as expedient or inex-

pedient, as politic or impolitic.    Considerations of this sort must be addressed to the Legislature.

Questions of policy cannot be considered here.    Chase, Ch. J., in License. Tax Cases, 5 Wall., 469.

Where therefore a part of a statute may be unconstitutional, that fact would not authorize the court to declare the remainder void also, unless all the provisions are so connected in subject-matter that one cannot stand without the other.    Cooley's Constitutional Limitations, p. 177.

Nor are courts at liberty to declare an act void because in their opinion it is opposed to a *spirit supposed to pervade* the *Constitution*, not *expressed* in *words*.    Cooley's Constitutional Limitations, pages 171, 172 ; People vs. Fisher, 24 Wendell, 220 ; State vs. Staten, 6 Cold., 233 ; 15 N. Y., 391.

The act of February 24, 1881, was not intended by the Legislature as a whole.    The first four sections repeal absolutely, and in such condition, without corporate existence, the Legislature provides the cities may remain, unless or until people of the district prefer to come under the system provided for such class of cities.    They can reorganize under no other system while in such condition.

Will the court grant the information, conceding the title of the respondents to be invalid, if it would result in the suspension of a municipal government in the city ?    4 Vroom, 195 ; 11 Vroom, 123.

In declaring a statutory provision unconstitutional, the court will strike out the unconstitutional part and enforce the residue, though it be a part of the same section, and even of the same sentence.    2 Peters, 526 ;  46 N. Y., 68 ; 5 Gray, 482; 2 Gray, 84; 7 Cal., 97 ; 40 Ala., 77 ; 29 Ala., 572 ; 4 Wheaton, 122 ; 3 A. K. Marshall, 76 ; Cooley's Const. Lim., 214 ; 20 Ohio, 173.

The Legislature unquestionably has plenary power to dis-

solve corporations. Mewervellen vs. Garnet, 102, U. S. 511; Cooley's Const., 4th Ed., 232–3, m. p., 192–3; Cooley's Lim., 195, m. p. 160; 200, 3–4, m. p. 165, 168.

A complete answer to the argument of Democratic maxims. Cooley's Lim., 205–6, m. p. 169–70; 53 Ala., 593; 15 Mich., 500; 15 N. Y., 547.

Legislation presumed by the courts constitutional, except in cases admitting of no reasonable doubt. Fletcher vs. Peck, 6 Cranch, 87; Morris vs. People, 3 Denio, 381; Deeamp vs. Eveland, 19 Barbour, 81; Clark vs. People, 26 Wendell, 593; 58 Ala., 596.

If the office, the duties of which were usurped, had no legal existence, it would follow no usurpation was established. People vs. Draper, 15 N. Y., 532; High on Ex. Rem. Sec. 695; People vs. Carpenter, 24 New York, 86.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

This is an information in the nature of a *quo warranto*, the relator, Haley, claiming the right to hold and exercise the powers and franchises of the office of Mayor of Fernandina as against the respondent, Stark, who now holds and executes the said office as he, Haley, relates, unlawfully and without legal warrant or authority.

On the 4th day of April, A. D. 1881, at an election held in pursuance of law, Haley was elected to the office of Mayor. He qualified and entered upon its duties. This election was held under a municipal, corporate organization had under the general act providing for the incorporation of cities and towns, which was then in force. On the 24th of February, A. D. 1881, the Legislature passed an act entitled "An act to repeal and dissolve municipal corporations under certain circumstances, and to provide the manner in which such cities may become re-incorporated;"

Chapter 3316, Laws.   Under its provisions the respondent,
Stark, was appointed Mayor of the city of Fernandina, and,
after qualifying, entered upon the discharge of the duties of
the office.   The relator insists that this act dissolving the
old corporation and creating the new one, under which re-
spondent was appointed, is unconstitutional; while the re-
spondent maintains that the act is within the constitutional
power of the Legislature, and that his title to the office is
legal.   It is thus apparent that the question here involved
is the constitutionality of the act mentioned.

The act provides for a dissolution of municipal corpora-
tions *having a bonded indebtedness, the bonds to be passed due
and unpaid, a fund for their payment not having been pro-
vided,* in the manner following: On the written application
of the holders or owners, or their agents, of one-half of the
unpaid bonds of the city to the Judge of the Circuit Court
of the Circuit in which the city is situated, accompanied
with satisfactory evidence that the city is *prima facie*
bonded, and that the bonds " are passed due and unpaid
and for which a fund for their payment has not been pro-
vided, it shall be his duty to make a certificate of such
facts, and cause the said application, proofs and certificates
to be filed and recorded in the office of the Clerk of the Cir-
cuit Court for the county in which the city is situated."
On the presentation of a certified copy of this certificate to
the Governor of the State, he is to issue a proclamation de-
claring that the charter of the city is repealed and the cor-
poration dissolved.   The act then provides for the incorpo-
ration of such dissolved corporation, which is to be had in
the manner following: On the petition of twenty or more
persons residing within the limits of the city thus dis-
solved, it is made the duty of the Governor to appoint a
Mayor and five Aldermen, residents of such city.   They
are to hold their offices for two years, and in case of va-

cancy the office is to be filled by the Governor. The municipal corporation thus organized is called a provisional municipality, but it is in fact a permanent government. Its boundaries are to be the same as those of the dissolved corporation, and it is to have all the powers of the antecedent corporation so far as they existed under the act establishing a uniform system of municipal government, and its amendments. Under this new organization, the Mayor and Aldermen appoint the City Marshal and Clerk, who is to act as Treasurer. Each of these officers is required to give bond. The Mayor and Aldermen are authorized to compromise and settle the existing indebtedness of the defunct corporation, having authority to issue bonds for that purpose, and there is an appropriation of one-half of one per cent. of the revenue of the city authorized by law to the payment of this debt.

Upon the County Commissioners of the county is devolved the duty to hear and determine applications for the correction of assessments of property, and the Tax Collector of the county is made the Collector for the city.

Under the existing system of municipal government applicable to all cities, and which was the system obtaining in the city of Fernandina and all municipalities having 300 registered voters at the passage of this act, the Mayor, the Marshal, City Clerk, Treasurer, Assessor and Collector of Taxes are elected by the people for the term of one year, and while the Aldermen are elected for two years, one-half are elected each year with a term of office of two years, one-half of the old board thus holding over each year.

If the present act is effective, it is thus seen that we have two essentially different kinds of municipal government operating in cities of the same class, as fixed by the original act and its amendments creating the system. In one the officers are appointed and hold their offices for two years.

In the other, except as to Aldermen, they are elected and hold their offices for one year, and as to the Board of Aldermen they are essentially different in their organizations, in that, under the one system they hold for two years each from the same date, while in the other one-half go out each year.

In view of the plainest deductions and conclusions which follow the application of a simple, honest judgment to these facts, can it be said that that is a uniform system of municipal government in which such plain differences may exist in cities in the same situation and·the same class? Can it be said that a uniform system of municipal government is *established* by this legislation? On the contrary, it is plain that the Legislature by its action, instead of *establishing* a uniform system of government for cities having a bonded debt, past due, for which payment has not been provided, places it within the discretion of the holders of one-half of the city's bonds and twenty persons residing within its limits, to fix the character of its government, to say whether its Mayor and Aldermen, its Marshal, its Clerk, its Treasurer, shall be elected by the people or appointed by the Governor, and whether the assessment and collection of its revenue shall be done by its own officers or by officers of the county in which the municipality may be situated.

The Constitution, which is a limitation upon the powers of the Legislature, not a grant of powers to it, provides that "the Legislature shall establish a uniform system of county, township and municipal government," and any action of that department of the government which destroys the uniformity of a pre-existing system, and permits and authorizes, in cities similarly situated, systems of government differing essentially in the manner of the selection of officers, their terms of office, and the manner of the assessment and collection of revenue, cannot be sustained. There

may be ten cities in the precise situation of the city of Fernandina, with reference to population, to indebtedness and in all other respects, and yet, dependent upon the action of one-half of its bond-holders and twenty residents, five of them may continue under the elective system of municipal government and four of them, through the action of some of their creditors and residents, may adopt the system of appointment by the Governor.

The Legislature instead of establishing a uniform system of municipal government leaves it to the discretion of twenty residents and one-half of the bond creditors of corporations to fix the character of the government. The Legislature must so act as to *itself establish*, first, a system of municipal government; and, second, the system must be a uniform system. The Constitution limits its power as well as fixes its duty in this respect in plain and unmistakable terms.

We see no necessity for elaborating these propositions. The authorities, so far as they have any application to the questions determined here, sustain without exception the conclusion we reach, and we are without the least doubt in the premises.

The only other matter which we deem it necessary to consider, is the proposition that while such portions of the act as provide for the reorganization of the municipality may be unconstitutional, that part which authorizes the dissolution may be effective. This question we must consider, because upon its solution depends the right of the party claiming title under the general act for the incorporation of cities, and under the act regulating proceedings in *quo warranto*, (Chapter 1874, Laws,) we must determine the right of the claimant here, and so enter judgment.

The rule, as announced by Judge Cooley and established by the authorities, is: " If a statute attempts to accomplish

two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect, the Legislature would not pass the residue independently; then, if some parts are unconstitutional, all the provisions which are thus dependent must fall with them." Can we give this act effect as an act to dissolve municipal corporations? Is such a conclusion consistent with the legislative intent? The title of the act shows its purpose to be to dissolve and to re-incorporate. A general statute (Chapter 3317, Laws,) passed at the same session of the Legislature with this act, provides a general method by which municipal corporations may surrender their franchises. That method is by a favorable vote of two-thirds of the voters voting at an election called to determine that question. The dissolution provided for here in the statute being considered is but a condition precedent, and a means by which a reorganization was to be rendered necessary.

The legislative intent here was to give to cities indebted in the manner stated in the act a new form of municipal government with peculiar and special powers, by which they might compromise and settle their debts. The dissolution was provided for simply as a method by which to reach that end. It was not the purpose to dissolve if the reorganization was not to be had. The power to dissolve was given simply as an initiatory step to the contemplated reorganization, and if the reorganization in the man-

ner provided cannot be had, then those provisions of the law, which are in the statute simply as a means and method to accomplish this primary purpose of the act, must fall also. The whole of this act must fall "unless the portion not opposed to the Constitution can stand by itself," and it is evident "that, in the legislative intent, it was not to be controlled or modified in its construction and effect by the part which is void."

Our conclusion is that the entire act must fall. In what we have said it must be understood that we do not decide or hold that the Legislature can, under the Constitution, authorize the holders of one-half of the bonds of an indebted corporation to dissolve such corporation; nor do we mean to say that the act, stripped of the discretion vested in the bondholders, would be constitutional. We decide the precise case before us—nothing more. We say that even if such power exists, it is here so exercised that it cannot be given effect and operation.

Judgment of ouster against the respondent.