Nevil and another vs. Clifford and others.

Nevil and another, Respondents, vs. Clifford and others, Appellants.

*May 6 — June 1, 1885.*

SCHOOL DISTRICTS: CONSTITUTIONAL LAW: COSTS: JUDGMENT. *(1) Building school-house: Powers of board. (2) Authorizing debt or tax. (3) Ratification. (4) Amount which may be borrowed. (5) Private law for collection of taxes. (6) Costs: Discretion. (7) Enjoining payment for school-house built under void contract.*

1. The school board has power to build a school-house out of funds provided by the district for that purpose, but has no power to build, or cause to be built, a school-house, and then make the cost of the building a charge against the district.

2. The voters at a school district meeting cannot authorize the school board to contract a debt on behalf of the district, or to levy a tax, in an amount beyond the limit of their own powers in that behalf.

3. Nor can a school district ratify a contract or acts of the school board, which it would have no power to authorize in the first instance.

4. A school district though containing less than 250 inhabitants may borrow a sum exceeding $600 for the purpose of building a school-house, if the money is borrowed on such terms that it will not be necessary, in order to repay it, to levy a tax exceeding $600 in any one year. Subd. 11, sec. 430, and secs. 475, 476, R. S.

5. A legislative act (ch. 166, Laws of 1883) attempting to validate a void judgment against a school district, and so to make it the duty of the taxing officers of such district to levy a tax to pay the judgment, is void under subd. 6, sec. 31, art. IV, of the constitution, as being a special or private law "for the assessment or collection of taxes."

6. Costs in an equitable action are in the discretion of the trial court, and unless it appears that such discretion has been abused this court will not interfere.

7. Although a judgment against a school district for the contract price for the erection of a school-house is void because entered by collusion with the district officers and because the contract was invalid, yet the court in setting aside the judgment at the suit of a taxpayer of the district should not perpetually enjoin the levy of any tax to pay for such school-house, but should leave the matter open for a just settlement.

APPEAL from the Circuit Court for *Rock* County.

The action is to set aside a judgment obtained by the defendants *Frank Clifford* and *John W. Clifford* against school district No. 1 in the town of Magnolia, and to restrain the collection of a tax to pay such judgment. The cause was before the court on a former appeal (55 Wis. 161), and from the report thereof and from the opinion herein the facts will sufficiently appear.

For the appellants there was a brief by *Sale & Pierce*, attorneys, and *S. U. Pinney*, of counsel, and oral argument by *Mr. Pinney*.

For the respondents there were briefs by *Winans, Fethers & Jeffris*, and oral argument by *Mr. Winans*.

TAYLOR, J. This action, like many others, grows out of a disagreement among the electors of a school district upon the subject of the erection and location of a new school-house in the district. The respondents and plaintiffs claim to be tax-payers in said district; the appellants the *Cliffords* were the contractors, who claimed to have constructed a new school-house for said district; and *Hartley* and *Brown* are the clerk and treasurer of the town in which said district is situate, and their connection with the case arises from the fact that the town clerk inserted in the tax roll a tax to pay a judgment the *Cliffords* had obtained against the district, and the town treasurer had the

tax roll in his hands for collection. After building the school-house the *Cliffords* obtained a judgment against the district for the contract price agreed to be paid to them for so doing by the district school board, and that judgment was certified to the town clerk of the town, and the amount thereof placed upon the tax roll of said town for the year 1879 as a tax upon the property of said district, as prescribed by sec. 488, R. S. 1878.

The complaint states in substance that the school board had no authority to enter into a contract with the *Cliffords,* or any other persons, for the erection of a new school-house for said district: (1) because the school district had not authorized a school-house to be erected upon the site where the same was built; (2) because no tax had been voted by the district for building a new school-house, and no authority had been given to the board to borrow money on the credit of the district for that purpose; (3) because the contract entered into by the district for building the new school-house called for the expenditure of more than $600, when the district did not contain to exceed 175 inhabitants. The complaint then further alleges that immediately after the erection of said school-house the *Cliffords* brought an action against said district to recover the contract price, viz., $680; and that, by the collusion of the district board, a judgment was immediately entered in favor of said *Cliffords,* and against the district, for said sum of $680.79 damages, and $29.70 costs of suit; and that immediately upon the rendition of such judgment the same was certified to the town clerk of the town of Magnolia, and by him inserted in the tax roll of said town as a tax upon the property of said district.

The sufficiency of this complaint as stating a cause of action against the defendants was considered by this court upon a former appeal. See *Nevil v. Clifford,* 55 Wis. 161. The allegations of the complaint are fully stated in that

case, and its sufficiency sustained. It is unnecessary, therefore, to make a more particular statement at this time. The case has now been tried upon its merits by the court without a jury. After hearing the evidence the court finds the following facts and conclusions of law:

### FINDINGS OF FACT.

"1. That said plaintiff *John Nevil* is, and when said action was begun was, and for a long time prior thereto had been, a resident and tax-payer in said school district No. 1 of the town of Magnolia, and is and was the owner of real and personal property therein subject to taxation, and which was taxed to pay the judgment referred to in the complaint.

"2. That on and prior to the annual school district meeting held in said district on the 25th day of August, 1879, said defendant school district was the owner of a schoolhouse site, with a school-house thereon; that on said last-named day, and at said annual meeting then held in said school district, a resolution was adopted by said meeting to build a new school-house, and have it completed by November 1st following; that at a subsequent adjourned meeting held August 30, 1879, a resolution was adopted to build said house on the site where the old school-house stood, and that the district board proceed with the erection of said house with all dispatch consistent with good construction.

"3. That at a subsequent adjourned meeting held September 9, 1879, said resolution to build on the old site was rescinded.

"4. That said school district did not and has not voted any sum of money, or authorized the loan of any sum of money, with which to build a new school-house.

"5. That said school district had not and has not, at any annual or special meeting for said district, legally designated a site on which said new school-house should be erected.

"6. That the members of the district board of said school district, on the 22d day of September, 1879, met in the village of Evansville, in the town of Union, and there entered into a written contract with the defendants *Cliffords* for the erection of a school-house in said district at a cost of $680, on a site that had not been legally selected or designated by the district, and for the building of which no money had been voted or loan authorized by said district.

"7. That said *Cliffords* erected said building under said contract, and that on the 22d day of November, 1879, the members of said district board signed a writing acknowledging the completion and acceptance of said building under said contract.

"8. That said *Cliffords* and the members of said district board knew, at and prior to the time said contract was made, all the proceedings and action that had been had and taken by the district in reference to building a new school-house and the site for the same, and entered into said contract and erected said building with full knowledge thereof, and knew, or had good reason to believe, that payment thereof by the district would be contested.

"9. That a school was begun in said new building under the direction of said board soon after its completion, and continued from the 24th day of November, 1879, to the 31st day of December, 1879.

"10. That one of the members of the district school board conveyed to said district, on the 22d day of September, 1879, the land whereon said building was erected, in consideration of one dollar paid him therefor by said board.

"11. That said school district No. 1 has never had to exceed 175 inhabitants.

"12. That, by previous agreement between said *Cliffords* and the members of said board, said *Cliffords* and said members met in the city of Janesville, at the law office of Messrs. Cassoday & Carpenter, on the 24th day of Novem-

ber, 1879, to begin an action in favor of said *Cliffords*, and against said school district, under said contract, and to hasten the same to judgment against said district; that said Cassoday & Carpenter were the attorneys of said *Cliffords*, and that the members of said board were, and each was, desirous to aid said *Cliffords* in obtaining a judgment, and prevent a defense being made thereto; that to this end an action was begun on said last-named day in favor of said *Cliffords* against said district, in the circuit court for Rock county, based upon said contract, and that the summons and complaint in said action were on the same day served on each of said school district officers then present in Janesville, by a clerk in the said law office of Messrs. Cassoday & Carpenter; that the record of said judgment fails to show any service whatever; that after such service, and on the same 24th day of November, 1879, at said city of Janesville, the director of said school district and members of said board made and delivered to the attorneys for said *Cliffords* an answer in said action, admitting all the allegations of said complaint, and did at the same time make and deliver to said attorneys a written waiver of notice of any and all subsequent proceedings in said action; that thereupon, and on the 28th of November, 1879, judgment was rendered and entered in said action, in said court, in favor of said *Cliffords* and against said school district for $680.79 damages, and $29.77 costs; that a certified transcript of said judgment was thereafter filed in the office of the town clerk of said town of Magnolia, and thereupon said town clerk assessed the amount of said judgment upon the taxable property in the said school district, including the property of the plaintiff *Nevil*, but omitting that belonging to the plaintiff *Hiram Yorke*, and thereupon delivered said assessment and tax roll to the town treasurer of said town for collection, and that said treasurer was proceeding to and with the collection thereof when this action was begun.

"13. That said *Cliffords* and said school district officers, at and before the time when said action was begun upon said contract, well knew that certain of the resident tax-payers of said district desired said director to defend said district against the enforcement of said contract, and against said action, and intended to contest the payment for said building, or any liability therefor; that said *Cliffords* and said district officers withheld from the tax-payers of said district all knowledge that an action had been or was about to be begun under said contract, and that these plaintiffs had no knowledge thereof until after said judgment had been obtained and said tax for the payment thereof levied as aforesaid; that said action was begun and said judgment obtained by collusion by and between said *Cliffords* and the members of the said district board, and in defraud of the rights of said plaintiff *Nevil* and the other tax-payers of said district."

### CONCLUSIONS OF LAW.

" 1. That said contract between said district board of said school district No. 1 and said *Frank* and *John W. Clifford*, under date of September 22, 1879, was unauthorized, and is null and void.

" 2. That said building was erected by said *Cliffords* without the authority of said school district.

"3. That there has been no ratification by said school district of said contract.

"4. That the said judgment in favor of said *Cliffords* and against said school district is null and void by reason of collusion in obtaining the same, and that it be adjudged null and void by reason thereof.

" 5. That the said tax assessed and levied on the taxable property of the district to satisfy said judgment is illegal and void; and that the said plaintiff *John Nevil* is entitled to judgment in this action declaring said contract and judgment, and said assessment and levy, null and void, and the

order or judgment of this court perpetually restraining and enjoining the officers of said town of Magnolia from the collection of said tax or any tax for the payment of said judgment, and from hereafter assessing any tax upon the taxable property of said school district to pay for said building.

" 6. That the complaint in this action be dismissed as to the plaintiff *Hiram Yorke*, with costs.

" 7. That judgment in favor of said plaintiff *John Nevil* be entered in accordance herewith, together with his costs and disbursements, to be taxed."

The appellants took exceptions to several of these findings of fact, as well as to the conclusions of law. Without going into any statement of the evidence, we think there can be no question that all the findings of fact are fully sustained by the evidence, except, perhaps, the fifth: " That said school district had not and has not, at any annual or special meeting for said district, legally designated a site on which said new school-house should be erected." We are inclined to hold that, in consideration of all the action taken by the district, both before and since the new school-house was built, the learned circuit judge would have been justified in finding that the district had selected the place where the new house now stands as the site for the school-house in said district. Having, at the school meeting held September 16, 1879, designated the place where the new school-house was built as the school-house site for the district, subject to the approval of the state superintendent, and the state superintendent having approved the same, and, since such approval, the district, by a legal vote, having directed the sale of the old site, and such old site having been sold in pursuance of such direction, we think the district must be deemed to have selected the place where the new building is erected as the site for their school-house.

But if the findings of fact be amended by changing the fifth

finding as above indicated, still, upon the other findings, the plaintiff *Nevil* was entitled to the judgment rendered in his favor, except so far as the judgment restrains the school district and the town officers "from hereafter assessing any tax upon the taxable property of said school district, or in said school district, to pay for said school building."

That the act of the school district board in making a contract with the *Cliffords* for the erection of a school-house in said district was wholly unauthorized and void for the purposes of binding the district, is evident. The power of the board to bind the district in this matter depends wholly upon the statutes. If they did not give them the power, then the district was not bound by their acts, and such acts could afford no foundation for a recovery in an action at law by said *Cliffords* against the district for the contract price of the building, nor would such acts be any legal basis upon which to assess a tax upon the property of the district to pay such price. The only authority given to the school board to build a school-house is found in sec. 434, R. S. 1878. This section reads as follows: "The district board, in their corporate name, shall purchase or lease such a site for a school-house as shall have been designated by the district, and shall build, hire, or purchase a school-house *out of the funds provided for that purpose,* and, when required, make sale of any school-house, site, or other property belonging to the district, and, if necessary, execute a conveyance of the same in their name of office, when lawfully directed by the qualified electors of such district at any annual or special meeting."

This section only authorizes the board to build a school-house *out of funds provided by the district for that purpose.* There is no power in the board to build or cause the house to be built, and then make the cost of the building a charge against the district. The power to charge the property of the tax-payers of the district with the cost of building a

school-house is vested in the voters of the district at a district meeting. See subd. 5, sec. 430, R. S. 1878. This section limits the power of the district meeting as to the amount that may be raised in the district by tax for that purpose in any one year; and, so far as the limitation applies to the district in question, that amount is limited to $600, unless a greater sum is authorized by the town board of supervisors. To the limitations contained in this section, ch. 118, Laws of 1879, adds an additional one. This additional limitation does not, however, affect this case. There is, however, no pretense that the evidence in this case shows that the district meeting ever voted directly to raise any tax for the purposes of building the school-house in question. If it be urged that the vote of the district, at the meeting on the 16th of September, 1879, "to let a job to a builder to get the house completed on the site designated, and directed the board to contract with a responsible bidder for the erection of a school-house," was equivalent to a vote to levy a tax on the property of the district for that purpose, it clearly could not, under the other limitations of the powers of the district meeting, be construed into a resolution to levy a tax exceeding $600, as that was the extent of their power when acting directly upon the question. They could not by indirection do that which they could not do directly. Nor could they delegate power to the board to contract a debt on behalf of the district, and levy a tax to pay the same, which they had no power to do themselves.

We have no doubt the district, though containing less than 200 inhabitants, might borrow money for the purpose of building a school-house, exceeding the sum of $600, provided it was borrowed upon such terms that it would not be necessary to levy a tax exceeding $600 in any one year, in order to pay the money so borrowed. See subd. 11 of said sec. 430, and secs. 475, 476, R. S. 1878.

It cannot be and is not seriously contended that the resolution adopted in reference to the borrowing of money was sufficient under the statute to authorize such loan by the board on behalf of the district. The resolution wholly failed to comply with the provisions of secs. 475 and 476, R. S., above referred to.

The power to loan money by a school district, or to vote taxes for district purposes, is by the statute vested in the voters of the district at a district meeting; and that power cannot be delegated by them to the discretion of the district board. *Harris v. School Dist.* 28 N. H. 58; *Gove v. Lovering*, 3 N. H. 292; *Goodrich v. School Dist.* 2 Wis. 102, 110; *Kane v. School Dist.* 52 Wis. 502. In this last case this court say: "If the district board could lawfully bind the district in a larger sum for a specific purpose, such as building a school-house, or purchasing fuel and appendages therefor, than the district itself has the power to raise for such purposes, then the whole purpose of the statute in restricting such expenditures would be avoided, and the district could be compelled by indirection to raise a tax for such purposes which would be absolutely unauthorized if voted directly by the people of the district." So, in the case at bar, if this contract of the school board and the judgment entered thereon against the district can be upheld, and a tax levied upon the property of the district for the year 1879, of over $700, to pay such judgment, then the board and the contractors will have succeeded in fixing a tax upon the tax-payers of the district which could not have been lawfully fixed thereon with the assent of every elector in said district voting for the same at a regular district meeting. To our minds it is clear that the district board colluded with the contractor to fix this illegal tax upon the district, and that it is the duty of a court of equity to declare the same illegal and void, and enjoin its collection. 1 Dill. Mun. Corp. (3d ed.), § 457, note 2, and cases cited.

Neither the electors of the district nor the district board had any power to impose this tax upon the property of the tax-payers of the district.

It was urged by the learned counsel for the appellant that this contract and tax had been ratified by the subsequent acts of the district. We are unable to see anything in the case which could be construed into a ratification either of the contract or the tax. As it is shown above that neither the district board nor the electors of the district would have the power to charge the property of the district with the tax in the first instance without the aid of the board of supervisors of the town in which the district is situate, it would be equally incompetent for them to ratify or legalize the tax without such aid. The only way they could ratify the contract for building the school-house would be to vote a tax with the consent of the town board to pay the amount due upon the contract, or otherwise vote to loan a sufficient sum to pay the same. Possibly, if the contract for building the school-house did not call for more than $600, and the district, after the same had been built, accepted and used it for its school-house, such acts on its part would have been held a ratification of the contract which would have enabled the contractors to recover thereon against the district, and so enable them to enforce its payment by a levy of a tax for the purpose of paying the judgment without any direct vote of the electors voting such tax. That would be doing indirectly what the voters might have done directly; but when the electors cannot, by direct action, fix the tax upon the property of the district, it is difficult to see how they can do it indirectly by way of ratification.

It is also urged that ch. 166, Laws of 1883,[1] was a ratifi-

---

[1] Ch. 166, Laws of 1883, provides as follows: "Section 1. The proceedings of the adjourned annual meeting of school district number one, of the town of Magnolia, in Rock county, state of Wisconsin, held on the sixteenth day of September, 1879, at which there was located a

Nevil and another vs. Clifford and others.

cation of the contract made with the contractors, and so was a validation of the tax levied to pay the judgment, or at least a validation of the judgment so that it might be enforced by a levy of taxes on the property of the district to pay the same. It seems to us that to uphold this act as a curative act would be to uphold legislation which violates either subd. 6 or 7, or both, of sec. 31, art. IV, of the constitution, being the amendment of the constitution adopted in 1871. This sec. 31 prohibits the legislature, among other things, from passing any special or private law, " (6) for the assessment or collection of taxes, or for extending the time for the collection thereof; (7) for granting corporate powers or privileges except to cities." It seems clear that the act of 1883, above referred to, is an attempt to do by indirection what the legislature, under the constitutional provision above quoted, would have no power to do directly. Had the legislature directed the school district board to levy and collect a tax upon the taxable property of the district to pay the judgment obtained by the *Cliffords* against the district, there could be no doubt such legislation would be a special act for the collection of taxes in said district, and void as in contravention of the constitutional prohibition above quoted.

What was said by the late learned Chief Justice RYAN in *Kimball v. Rosendale*, 42 Wis. 407, 416, of the special legislation in that case, is equally as applicable to the case at bar, and is conclusive as to its unconstitutionality. In substance and effect there can be no essential difference between an act which validates a void judgment against a

site for a school-house in said district, and authority voted the district board to obtain a loan of money from the state school fund for the purpose of paying for said school-house; and all the acts of the school district officers of said district for the year 1879, in purchasing a site for a school-house in said district and letting contracts for building, furnishing and seating the same, are hereby legalized and declared legal and valid."— REP.

district, town, or county, and so makes it the duty of the taxing officers of such district, town, or county to levy a tax to pay the amount thereof, and an act which in express terms directs such tax to be levied. If the last act be void as against the prohibition of the constitution, it would seem the other must be also.

It is objected on behalf of the town officers, who are defendants in this action, that it was unjust to render judgment against them for the entire costs of the action. By an examination of the pleadings it will be seen that they answered the same matters as a defense to the action as the other defendants, and consequently the plaintiffs were put to the same trouble in making a case against them as they were in making a case against the other defendants. This may have induced the learned circuit judge to order costs against all the defendants equally. The costs, in cases of this nature, are in the discretion of the court, and we cannot interfere unless it appears that such discretion has been abused. In this case it does not appear that the attention of the learned circuit judge was called to this matter of costs. Had the defendants who now complain of the judgment as to costs, called the attention of the judge at the time to their relations to the case, it is possible that some other order would have been made upon that subject; but, upon the record as it is before this court, we would not be justified in interfering as to the award of costs against all the defendants.

We are of the opinion that so much of the judgment of the circuit court as enjoins the defendants " from hereafter assessing any tax upon the taxable property of said school district, or in said school district, to pay for said school building," is too far-reaching and should be reversed. It will be seen that this injunction is against the school district, as well as the town clerk and town treasurer, and might, if permitted to stand, restrain any action on

the part of the district looking towards the future purchase and payment for said school building. This, certainly, the court ought not to do. It is evidently the interest of the district to have a just and final settlement of this controversy, and it is highly probable that the best way, for the interest of all, out of the difficulty, is for the district to make some just arrangement for the purchase of the school building erected by the *Cliffords* and now occupying the school district site.

*By the Court.*— That part of the judgment which enjoins the defendants "from hereafter assessing any tax upon the taxable property of said school district, or in said school district, to pay for said school building," is reversed, and the remainder of the judgment is affirmed; the appellants to recover their costs upon this appeal.

CASSODAY, J., took no part.