ATTORNEY GENERAL, EX REL. JAMES HART ET AL., V. LAWRENCE CAIN ET AL.

*Quo warranto—Officers—Municipal police—Information—Misjoinder of respondents.*

1. The office of policeman, the incumbent of which is subject to the orders and direction of the common council of a city, and to removal at their discretion, does not rise to the dignity of being entitled to the notice of the Attorney General by *quo warranto* proceedings. *People v. DeMill,* 15 Mich. 182; *Portman v. Commissioners,* 50 Id. 258.

2. Respondents cannot be joined in *quo warranto* proceedings where the title of one to the office into which they are charged with intruding does not depend upon that of the other.

*Quo warranto.* Submitted on briefs December 5, 1890. Proceedings dismissed December 24, 1890.

Information in the nature of a *quo warranto* to test the right of respondents to act as policemen of the city of Adrian. The facts are stated in the opinion.

*B. W. Huston,* Attorney General (*Watts & Smith,* of counsel), for relators.

*Walter S. Westerman* (*F. A. Baker,* of counsel), for respondents.

MORSE, J. This is a proceeding by *quo warranto.* The information is in the usual form, and charges:

1. That, by virtue of the charter, ordinances, rules, and regulations of the city of Adrian, four policemen were authorized for said city, and only four.

2. That the four relators had been duly appointed to hold and perform the duties of such policemen; that each had duly qualified and filed his bond, as such officer;

and that they are still lawfully entitled to hold said positions.

3. That the four respondents had, without any authority of law, intruded themselves into such positions, and continued to hold the same, without any warrant of law.

Respondents demur, and assign six special causes of demurrer, viz. :

"1. The alleged office of policeman of the city of Adrian is not an office created by the State.

"2. The alleged office of policeman of the city of Adrian is not an office for which an information in the nature of a *quo warranto* can be maintained.

"3. The position of policeman of the city of Adrian is not an office.

"4. The four defendants in this case cannot properly be proceeded against in one information.

"5. The case is not one in which the relators can establish their own titles to said alleged offices of policemen of the city of Adrian.

"6. There is no such office as the four policemen of the city of Adrian."

The case is submitted to us upon this demurrer, which the Attorney General contends is not sufficient in law.

The provisions of the charter of the city of Adrian (Act No. 384, Local Acts of 1887), as to police, are as follows:

The common council may, by ordinance, provide for a police force, and for the appointment by the mayor, by and with the consent of the council, of such number of policemen and night-watchmen as they may deem necessary for the good government of the city; and may authorize the appointment of special policemen by the mayor, "from time to time, when, in his judgment, the emergency or necessity may so require; and may provide for and appoint subordinate officers for the police and night-watchmen." Section 148.

"The council may make and establish rules for the regulation and government of the police, prescribing and defining the powers and duties of policemen and night-watchmen, and shall prescribe and enforce such police regulations as will most effectually preserve the peace and

good order of the city. * *· * And the mayor is hereby authorized, whenever he shall deem it necessary for the preservation of peace and good order in the city, to appoint, and place on duty, such number of temporary policemen as, in his judgment, the emergencies of the case may require; but such appointments, unless made in accordance with some ordinance or resolution of the council, shall not continue longer than three days." Section 149.

The city marshal, subject to the direction of the mayor, as chief of police, has superintendence and direction of the police, subject to the regulations of the council. Section 150.

"The mayor may suspend any policeman or night-watchman for neglect of duty, misconduct, or other sufficient cause, and the council may remove from office any policeman appointed thereto at any time." Section 152.

It would seem that the number of policemen, their term of office, and their removal from office, is entirely within the will of the common council of the city. They may be appointed for one day, or for a year, and may be removed, at any time, without cause shown, from their position, by the common council. These persons, policemen and night-watchmen, are not mentioned in the city charter as city officers, and there is nothing in any of its provisions warranting the claim that they are to be considered as such officers. They are not required, unless it be by ordinance, to take any oath, or file any official bonds.

It is stated in the brief of relators, and not denied by the respondents, that the ordinance pertaining to city police provides:

"Section 1. *The City of Adrian ordains,* that a city police is hereby established, to consist of the city marshal, who shall be chief of police, and such number of policemen as the common council from time to time determine.

"Sec. 2. The policemen shall be· appointed by the

84 Mich.—15.

mayor and city marshal, by and with the advice of the common council. Every policeman, before entering on the duties of his office, shall take the oath of office prescribed by the Constitution of this State, and shall also (except in the case of special policemen appointed for temporary duty) give bond to the city of Adrian in the sum of one thousand dollars, with good and sufficient sureties, to be approved by the mayor, conditional for the prompt and faithful performance of the duties of his office, and shall file such oath and bond with the city clerk."

We shall take it for granted that this is the ordinance. It is contended by counsel for relators that sections 18 to 21 of said charter, corresponding with How. Stat. §§ 2428, 2430, 2433, 2436, apply to these policemen as appointed officers of the city. These sections are as follows:

" SEC. 18. Appointments to office by the council, except appointments to fill vacancies, shall, unless otherwise provided, be made on the first Monday of May, in each year; but appointments which, for any cause, shall not be made on that day may be made at any subsequent regular meeting of the council.

" SEC. 19. The mayor, city marshal, city clerk, city treasurer, city collector, street commissioner, supervisors, and constables shall hold their offices for the term of one year from the second Monday in April of the year when elected, and until their successors are qualified, and enter upon the duties of their offices. One justice of the peace shall be elected annually for the term of four years from the fourth day of July next after his election.

" SEC. 20. At the first election of aldermen in new wards, one alderman shall be elected in each ward for the term of one year, and one for the term of two years. The term of each shall be designated on the ballots cast for him. After the first election, one alderman shall be elected annually in each year for the term of two years from the second Monday in April in the year when elected, and until his successor shall be qualified, and enter upon the duties of his office.

" SEC. 21. All other officers appointed by the mayor or council, except officers appointed to fill vacancies in

elective offices, shall hold their respective offices until the first Monday in May next after such appointment, and until their successors are qualified, and enter upon the duties of their office, unless a different term of office shall be provided in this act, or by ordinance duly enacted."

And that, consequently, as we deduce from their argument, they must be appointed on the first Monday in May, or at some subsequent regular meeting of the council, and hold their offices until the first Monday in May next after such appointment, and until their successors are qualified, and enter upon the duties of their office. We are satisfied that the policemen and night-watchmen do not come under these provisions of the statute at all, and that their tenure of office is regulated by the will of the common council solely.

We do not think the position of policeman, under these circumstances, is such an office as authorizes the Attorney General to file an information by *quo warranto* in this Court to test the title to the position. It was said in *People v. DeMill*, 15 Mich. 182, that,—

"There are grades of positions denominated 'offices' which do not rise to the dignity of being entitled to the notice of the Attorney General by information." See, also, *Throop v. Langdon*, 40 Mich. 686.

It is certain that the intent of the charter is that these policemen shall be subject to the orders and direction of the common council, and that such council has the power at any time to remove them. It would, therefore, be useless for the Attorney General, on the relation of any one of them, to undertake to determine who was entitled to the position, as, before the matter was judicially determined, the council could, at once and forever, end the controversy by removing one and appointing the other, or by ignoring both contestants, and putting a third person in the place. It was held in *Portman v.*

*Commissioners,* 50 Mich. 258, that the Superintendent of
Fisheries of the State of Michigan was not an "officer,"
within the meaning of the Constitution and laws of this
State. This opinion was founded on the fact that he
was subject to the orders and directions of the Board of
Fish Commissioners, and removable at their pleasure.

We are also of the opinion that in any event the four
respondents in this case could not properly be joined in
one information. The title of one does not depend upon
the title of any other, and, if it were a case for procedure
by *quo warranto,* each would be entitled to be proceeded
against singly.

The demurrer is sustained, and the proceedings dis-
missed, with costs against the relators.

The other Justices concurred.