[No. 1399.]

JAMES B. SINGLETON, RESPONDENT, *v.* EUREKA COUNTY, APELPLANT.

SPECIAL LEGISLATION—CONSTITUTIONAL LAW.—The statute of 1893, page 80, authorizing the sheriff of Eureka county to appoint a night watchman at a fixed salary, payable by the county, is special legislation, and in direct conflict with the constitution of Nevada, article IV., section 25, which requires a system of county governments uniform throughout the state.

SPECIAL AND GENERAL LAWS.—A law, though not applicable to all counties in the state, may be of a general nature by reason of the fact that localities and objects upon which it acts are distinguishable from others by a peculiar relation to the legistative purpose.

APPEAL from District Court, Eureka county; *Hon. A. L. Fitzgerald*, District Judge.

The facts are sufficiently stated in the opinion.

*Peter Breen*, District Attorney of Eureka county, and *Thomas Wren*, for Appellant:

Section 4 of the act under which respondent claims reads as follows : "The board of county commissioners of said Eureka county may appoint one night watchman for the town of Eureka; *provided*, the amount allowed or paid therefor, in any one year, shall not exceed the sum of $900." (Stats. 1869, p. 80.)

Two years later said section was amended, and again on March 4, 1893, which is the present law, and reads as follows: "The sheriff of Eureka county is hereby authorized and empowered to appoint one night watchman at a salary of $75 per month, said salary to be allowed and paid in the same manner as the salaries of other county officers and employes are allowed and paid." (Stats. 1893, p. 80.)

On the 2d day of January, 1893, the then sheriff, without consultation with the county commissioners, appointed respondent night watchman of the town of Eureka, whereupon respondent qualified and entered upon the discharge of his duties, and continued to act as such until the 5th day of April, 1893, and on the 5th day of April, 1893, the sheriff appointed respondent night watchman and deputy sheriff of Eureka county, and upon the same day respondent qualified as such and continued to exercise his duties as night watchman of the town of Eureka until the commencement of this action. The respondent never acted as night watchman outside of the town of Eureka.

Respondent recovered judgment in the court below for the full amount claimed. Appellant's motion for a new trial was overruled by the court, and this appeal is from the order overruling the motion.

From the title of the act it seems fairly certain that the legislature intended to create the office of night watchman for the town of Eureka, and from the language of the amendatory act, passed in 1893, in relation to the payment of his salary, it is equally evident that the legislature of that year regarded him as a county officer.

The act unquestionably creates an office. Where an individual has been appointed or elected in a manner required by law, has a designation or title given him by law and exercises functions concerning the public assigned to him by law, he must be regarded as a public officer. (Anderson's Dictionary of Law, p. 729.)

The section of the act authorizing the sheriff to appoint a night watchman created an office and is in violation of sections 20 and 25 of article IV. of the constitution, which provides that the "legislature shall establish a system of county and township government, which shall be uniform throughout the state."

It is not clear what the constitutional convention intended to embrace in the phrase, "county and township government," but it certainly includes all of the officers of counties and townships. Creating an office for Eureka county, alone, by a local or special law, is a palpable violation of this section of the constitution.

If respondent is not an officer, but simply an employe, the act directing his appointment and fixing the amount to be paid him and the mode of allowing it is a regulation of county business and in direct violation of the section of the constitution above cited. (*State* v. *Boyd*, 19 Nev. 343; *Evans* v. *Job*, 8 Nev. 333.)

In this case, there was a general law already on the statute books that was equitable and just and applicable for the appointment of policemen, and policemen and night watchmen are synonymous, hence there was no occasion for the passage of a local or special law. (Gen. Stats., secs. 2041, 2049.)

*Henry Rives,* for Respondent:

A statute will always be sustained if there is any reasonable doubt of its constitutionality. (5 Nev. 15; 7 Nev. 23; 5 Nev. 111, 194; 8 Nev. 322; 9 Nev. 212.)

Contemporaneous legislation is always considered of great importance in determining the intention, and also the constitutionality of an act. (5 Nev. 15; 7 Nev. 23.)

The legislature may create or abolish any office not provided for by the constitution. (1 Nev. 240.)

Article XV., sec. 10, constitution of Nev.: No law is so

"local" or "special" as to be inhibited by the constitution, if it affects all interested or reached by it alike. (5 Nev. 15, 115, 194; 8 Nev. 322; 19 Nev. 247.)

The legislature is the sole judge of the policy and expediency of every law. See all of the above authorities.

Respondent is not an "officer," but an employe of appellant. (N. W. Rep. 809.)

By the Court, MURPHY, C. J.:

The only question argued before this court, and the one relied upon by the appellant in the district court, to defeat the right of the respondent to recover the money alleged to be due him, is that the act of the legislature under which the respondent received the appointment and performed the services is unconstitutional.

The act thus challenged reads as follows: "The sheriff of Eureka county is hereby authorized and empowered to appoint one night watchman at a salary of $75 per month, said salary to be allowed and paid in the same manner as the salaries of other county officers and employes are allowed and paid." (Stats. 1893, p. 80.)

The contention is that this act falls within the prohibition mentioned in section 20 of article IV., and is not a compliance with section 25 of the same article of the constitution. By the tenth paragraph of section 20 the legislature is prohibited from passing local or special laws "regulating county and township business;" and by section 25 "the legislature shall establish a system of county and township government, which shall be uniform throughout the state." Section 21 of the same article reads: "In all cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the state."

During the session of the legislature of 1865 an act was passed by that body, and approved by the governor, section 9 of which authorized and empowered the sheriff of any county to appoint policemen, not exceeding two in number, in any unincorporated city, town or village. Their compensation was not to exceed $100 per month. The policemen should serve within the limits of such unincorporated city, town or village, and, in case of the appointment of more

than one policeman, one should serve in the day time and the other at night. Section 10 of the act provides that it shall not be put in force, or have effect, until a petition should be presented to the board of county commissioners, signed by a majority of the resident electors of the city, town or village, and requesting the appointment of such policemen, and the levying of a tax of one-fourth of one per cent, as provided for by the act. Section 11 provides that upon the presentation of such a petition it shall be the duty of the board of county commissioners to levy the tax, and notify the sheriff, in writing or otherwise, to make the appointment of one or more policemen, as provided for by the act. In the foregoing act we have a general law, which has been on our statutes for twenty-nine years. It is uniform in its operation, and the constitutional provisions were complied with when the legislature had devised one system or plan for the government of unincorporated cities, towns and villages. By it certain general powers of local government and police regulations were delegated to the resident electors of unincorporated cities, towns and villages, upon presentation of a petition to their board of county commissioners, who were elected officers and had control of the internal affairs of the county, and the power to levy taxes, and whose duty it was to carry into effect the wishes of the resident electors.

If the act of 1893, in authorizing and empowering the sheriff of Eureka county to appoint one watchman, created a county office, then the act clearly comes within the constitutional interdiction, because it is not uniform in its operation. By its terms it is confined to, and was intended for, Eureka county, and never was intended to apply to any other county in the state, and is interdicted by section 25 of article IV. of the constitution.

"No words could have been used by the legislature that could limit the operation of the act to the county of Eureka more absolutely and definitely than those employed in the act of 1893." (*State* v. *Boyd*, 19 Nev. 43; *Williams* v. *Bidleman*, 7 Nev. 68; *State* v. *Dousman*, 28 Wis. 542; *Nevil* v. *Clifford*, 63 Wis. 446, 24 N. W. 65; *State* v. *Supervisors*, 25 Wis. 346; *Frye* v. *Partridge*, 82 Ill. 273; *Montgomery* v. *Com.*, 91 Pa. St. 132; *State* v. *Riordan*, 24 Wis. 486; *Hallock* v. *Hollings-*

head, 49 N. J. Law, 64, 6 Atl. 433; *Freeholders* v. *Buck*, 49 N. J. Law, 228, 7 Atl. 860; *State* v. *Mitchell*, 31 Ohio St. 607; *State* v. *Hermann*, 75 Mo. 346; *McCarthy* v. *Com.*, 110 Pa. St. 246, 2 Atl. 423.)

A watchman is an officer in cities or towns, whose duty it is to watch during the night and take care of the property of the inhabitants. (Black, Law Dict.; Bouv. Law. Dict.) Webster's definition of the word "watchman" is, "one who guards the streets of a city or building by night."

The plaintiff, in testifying, said: "I have been night watchman by appointment of the sheriff of Eureka county since the 2d day of last January. Ever since that date I have acted continuously and exclusively as night watchman in the town of Eureka. I never acted as night watchman outside the town of Eureka during said time. It is my duty, as night watchman, to walk the streets of Eureka from about dark until daylight, to guard against fire, to ring the curfew bell, and perform all of the duties incident to and usually performed by a night watchman of a village." This is a sufficient statement of the evidence to show what the duties of the plaintiff were, and what they were intended to be.

The counsel for respondent contends that the position of watchman is not an officer, but an employe of the county, and he cites the case of *Trainor* v. *Board*, 50 N. W. 809. We do not think that case supports his position. All that is held in that case and the cases referred to in the opinion of the court is, officers receiving their appointments from county boards, or a city council, and removable at the will and pleasure of such boards and council, are not the holders of such offices as the courts would concern themselves about in *quo warranto* proceedings.

Take the case of *The Attorney-General* v. *Cain*, 84 Mich. 223, 47 N. W. 484, which was an information in the nature of a *quo warranto* to test the right of certain parties to act as policemen of the city of Adrian. The court said: "It would seem that the number of policemen, their term of office, and their removal from office is entirely within the will of the common council of the city. They may be appointed for one day or for one year, and may be removed at any time, without cause shown, from their position by the common council. These persons—policemen and night

watchmen—are not mentioned in the city charter as city officers, and there is nothing in any of its provisions warranting the claim that they are to be considered as such officers. * * * We do not think the position of policemen, under these circumstances, is such an office as authorizes the attorney-general to file an information by *quo warranto* in this court to test the title to the position:"

It was said in *People* v. *De Mill*, 15 Mich. 182, that "there are grades of position denominated 'offices' which do not rise to the dignity of being entitled to the notice of the attorney-general by information." We do not understand that any of the decisions referred to deny but what policemen and watchmen in cities and towns are officers, but what they do hold is their right to hold and perform the duties of such offices cannot be inquired into by *quo warranto*, because such offices are not usually created by legislative acts; and, as was said by Judge Cooley, in closing the opinion in the case of *Throop* v. *Langdon*, 40 Mich. 686: "But it is proper to say that it is at least doubtful whether the proceeding by information is applicable to the case of an office not created by the state itself." The legislature has, in the case under consideration, tried to create an office; but whether the respondent be an officer or an employe is immaterial, for the reason that the act under which his appointment was made, and upon which he relies for a recovery of the money alleged to be due, is local and special, being confined to Eureka county alone, and falls within the prohibition of the constitution.

It is not disputed but what the legislature has the power to increase, diminish, consolidate, or abolish certain county officers, and to regulate county and township business by general laws. If the act increasing, diminishing, consolidating, or abolishing the officers, or regulating the internal affairs, be of a general nature, although it may not be applicable to all the counties of the state by reason of the fact that the localities and objects upon which it was intended to act are distinguished from others by characteristics evincing a peculiar relation to the legislative purpose, and showing the legislation to be appropriate to some counties or localities and inappropriate to others, the counties or localities will be considered as a class by themselves as

respects such legislation, and legislation affecting such a class in general; but if the act increasing, diminishing, consolidating, or abolishing county officers, or regulating the internal affairs of a county, excludes from its operation counties or localities similarly situated, and in like relation to the legislative purpose, then the classification is not uniform, and is faulty as being local and special. The act under consideration falls within the rule of the latter class, and is an attempted regulation of the internal affairs of Eureka county, and all other counties similarly situated are excluded from the privileges thereof; and the respondent, claiming his appointment of night watchman under the provisions of an unconstitutional act, cannot recover in this action.

It is ordered that the judgment of the district court be reversed, and the cause remanded.

Belknap, J.:   I concur.

Bigelow, J., concurring:

Experience has proven that for many reasons and in many ways local and special legislation is harmful to the public interests.  Legislators are elected to enact laws, not for one locality alone, but for the whole state, in the hope that in the multitude of counsels there may be wisdom; but where such legislation is permitted a bill affecting but one locality is almost invariably referred to the local members, and, if satisfactory to them, is passed without scrutiny from the other representatives, and without any feeling of responsibility upon their part.  The possibility of it leads to improper combinations among the members, and often to crude, and even vicious, legislation, that would not be permitted were it to affect the whole state.

Among a number of provisions in the constitution directed against this evil is the one requiring the legislature to establish a system of county and township government which shall be uniform throughout the state.  To a certain extent the system to be adopted was left to the discretion of the legislative body, but the requirement is absolute that, whatever the system may be, it must be uniform, indicating that this uniformity was a more important consideration with the constitution makers than the plan to be adopted.  These

limitations upon the power of the legislature should be
executed by the courts in the same spirit in which they were
adopted, and so as to prevent legislation sought to be guarded
against.

A system of government consists of the powers, duties and
obligations placed upon the political organization, and the
scheme of officers charged with their administration. If the
system is to be uniform, it is necessary that these powers,
duties and obligations shall be the same in each county; that
the same officers shall be provided, and the responsibilities of
government be divided among them in the same manner;
otherwise the system is not uniform, for, as here used, the
word means that the county governments to be established
are in all essential particulars to be alike.

*State* v. *Boyd*, 19 Nev. 43, is an authority squarely in point,
and that fully sustains this construction of the constitution,
and that case is in turn supported by a number of well-con-
sidered cases from Wisconsin (*State* v. *Riordan*, 24 Wis. 484;
*State* v. *Supervisors*, 25 Wis. 339; *State* v. *Dousman*, 28 Wis.
541; *McRae* v. *Hogan*, 39 Wis. 529; *Rooney* v. *Milwaukee Co.*,
40 Wis. 23); and from Florida (*Lake* v. *State*, 18 Fla. 501;
*McConihe* v. *State*, 17 Fla. 238; *State* v. *Stark*, 18 Fla. 255; *Ex
parte* Wells, 21 Fla. 280); and from California (*Welsh* v.
*Bramlet*, 98 Cal. 219, 33 Pac. 66), where, under varying cir-
cumstances, similar clauses in the constitution of those states
were considered and construed.

Let us now examine the act upon which the respondent
rests his right to recover in the action. It was first enacted
in 1889 (Stats. 1889, p. 80) and is entitled "An act fixing
the salaries and defining the duties of certain county officers
of Eureka county and other matters relating thereto." Sec-
tion 1 fixes the salaries of the officers of that county as they
then existed. Section 2 directs that no other compensation
shall be paid them by the county. Section 3 forbids the
payment by the county deputies, except in one instance.
Section 4 reads as follows : " The board of county commis-
sioners of said county may appoint one night watchman for
the town of Eureka, provided the amount allowed or paid
therefor in any one year shall not exceed the sum of $900."
In 1891 (Stats. 1891, p. 78) this section was amended so as
to read: " The board of county commissioners of Eureka

county may authorize the sheriff to appoint one night watchman at a compensation not to exceed $75 per month." In 1893 (Stats. 1893, p. 80) the section was amended to its present form, and now reads: "The sheriff of Eureka county is hereby authorized and empowered to appoint one night watchman at a salary of $75 per month, said salary to be allowed and paid in the same manner as the salaries of other county officers and employes are allowed and paid." Here, perhaps, is a fair illustration of the effects of permitting local and special legislation. At each session of the three last legislatures an act has been passed concerning a small matter of purely local concern, that should have been left, under the general law, entirely to the people interested, and whereby the taxpayers of other parts of Eureka county have been compelled to assist in maintaining a watchman for the town of Eureka, for that has been the practical construction put upon the act; something in which they had no interest, and from which they derived no benefit, for the fact that the county owned property in the town no more called upon it to furnish a town watchman than it did upon the owners of any other property therein.

As will be readily noticed, as originally enacted, section 4 provided for the appointment by the commissioners of a night watchman for the town of Eureka, who was, inferentially, to be paid by the county, not to exceed a certain sum. The amendment of 1891 provided that, instead of appointing him themselves, the commissioners might authorize the sheriff to do so, and the clause that provided that he should be appointed for the town of Eureka was omitted. The amendment of 1893 authorizes the sheriff to appoint him without reference to the commissioners, and provides that he shall be paid the sum of $75 per month, in the same manner as the salaries of other county officers and employes are paid.

By the amendments the watchman is not to be appointed for any particular place, and it was argued by the respondent's attorney that if his services were more needed elsewhere than at the town of Eureka, he could transfer them there. As the laws now stands, this view seems correct, for apparently *ex industria* the legislature has omitted the provision that he is to be appointed for that town, which indicates an

intention to repeal it, and he is furthermore to be appointed by an officer whose jurisdiction certainly extends all over the county. Probably it would make no difference here if his duties were confined to the town, but, as the matter stands, we have in Eureka county a watchman whose duties and jurisdiction extends all over the county, who is provided for in an act entitled an act fixing the salaries of the county officers of that county, who is to be paid by the county, and in the same manner that the salaries of other county officers and employes are to be paid. These premises lead surely to the conclusion that the intention was that he should become permanently an integral part of the government of that county, and as much one of its officers as any other officer in it. Other counties do not have such an officer, and it follows that this brings the act in conflict with the constitutional provision requiring uniformity in the county governments. Certainly this law is fully within the mischief intended to be guarded against by the constitution, and also, as it seems to me, clearly within its letter.

2. There are several other constitutional provisions with which the act seems to conflict, but there is one with which the conflict is clear, and that is that no local or special law shall be passed regulating county and township business. That the law is local to Eureka county cannot be denied, and to some extent it certainly regulates the business of that county. "County business" may be defined as covering almost everything that concerns the administration of the county government. It includes the election or appointment of its officers and employes, the amount of their compensation, and how, when, and from what fund it is to be paid. This act directs how the watchman is to be appointed, upon which subject there have been three different regulations. It regulates its business by making it responsible for the watchman's salary, which otherwise it would not be. It directs that the county's money shall be taken from its treasury, and paid to one who otherwise would have no claim upon it. It fixes the amount which the county must pay, and by reference to the manner of payment of the salaries of other county officers, it directs how, when, and from what fund the money is to be paid. This is a regulation of county business, within

the meaning of the constitution, concerning which local laws are forbidden. (*Welsh* v. *Bramlet*, 98 Cal. 219; *Williams* v. *Bidleman*, 7 Nev. 68; *Montgomery* v. *Com.*, 91 Pa. St. 125.) I concur in the judgment.